IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COX ENTERPRISES, INC., a Delaware
corporation,

       Plaintiff,

v.

NEWS-JOURNAL CORPORATION,
a Florida corporation, HERBERT M.
DAVIDSON, JR., MARC L. DAVIDSON,
JULIA DAVIDSON TRUILO, JONATHAN
KANEY, JR., DAVID KENDALL, ROBERT
TRUILO, GEORGIA KANEY, PMV, INC.,
a Florida corporation, and LIVELY ARTS
CENTER, INC., a Florida corporation,

       Defendants.
_____/

Case No. 6:04-cv-698-Orl-28KRS

## DEFENDANTS' OMNIBUS MOTION IN LIMINE
## AND SUPPORTING MEMORANDUM OF LAW

      Pursuant to Rules 16(c)(3) and (4), Federal Rules of Civil Procedure; Rules 104(a), 403, and 702, Federal Rules of Evidence; the attorney-client and work product privileges; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendants move in limine for an Order granting the following relief:

      1.    Plaintiff, Cox Enterprises, Inc. ("Cox"), should not be permitted to offer at trial *any evidence* in support of its allegations that Defendants engaged in the "waste" of the News-Journal's corporate assets, breached fiduciary duties, or engaged in any other mismanagement. The grounds for this exclusion are that Cox has proffered no expert testimony whatsoever addressing the impact, if any, that such alleged "waste" has on the "fair value" of its minority interest in the News-Journal Corporation ("NJC"), which is the sole issue in this proceeding.

Since evidence of alleged corporate misconduct is relevant to a valuation proceeding only if expert testimony establishes the impact it may have on the valuation of the minority interest, and Cox has proffered no such expert valuation evidence, all evidence of "waste" is irrelevant and must be excluded. *Gerzof v. Coons*, 526 N.Y.S. 2d 458, 459 (N.Y. App. Div. 1990).

2. For the reasons set forth in the *Daubert* motions filed by NJC, and denied without prejudice by the Magistrate Judge, and as stated in the lengthy oral argument presented to her, the expert evidence adduced for Cox in the form of testimony and reports by Mr. Van Essen, Mr. Dean Bonham, Mr. William Jennings, and certain other named expert witnesses, should be excluded from consideration by this Court. Mr. Van Essen's opinion is neither reliable, nor helpful or applicable, to the instant valuation of Cox's minority shares because he failed to opine as to the "fair value" of the Cox shares in the context of NJC's "going concern" business plan; instead, he essentially added a "control premium" by valuing the shares as if the entire corporation were sold to a buyer who would immediately exercise his control by replacing the majority's existing business plan and extracting maximum short-term monopoly returns, without concern for the larger and longer-term corporate interests and community responsibilities - which in part animate NJC's existing business plan. Van Essen also failed to apply any marketability discount reflecting that the minority shares of NJC at issue are not traded on the public stock markets.

The testimony of Cox's other experts also should be excluded because their evidence is in no way applicable to a determination of Cox's asserted share valuation, and is otherwise unreliable.

3. Finally, the "SMT Memo" authored by Jonathan Kaney and dated November 9, 2000 must be ruled inadmissible at trial because it is protected by *both* the attorney-client and

work product privileges. Even if Cox is entitled to review privately this document because it is a minority shareholder of NJC, it may not waive NJC's attorney-client privilege and submit the document for consideration at trial, because only the Board of Directors of a corporation may authorize such a waiver of privilege under Florida corporate law. *Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506, 507 (Fla. 2d DCA 1988). The SMT Memo also consists primarily of inadmissible legal opinions which would improperly invade the province of the Court. Finally, any probative value of the SMT Memo is greatly outweighed by the danger of unfair prejudice, the confusion of the issues, and the burdensome and unwarranted lengthening of the trial.

## MEMORANDUM OF LAW

In Cox's "looking glass world" a newspaper's decision to advance its long term interests by supporting the cultural development of its market is waste. According to Cox, NJC's decision to forego short run monopoly returns, in favor of reasonable profitability goals that recognize the need of the community for quality news reporting and affordable advertising rates fostering local business growth, is mismanagement. Commitment to the market's cultural improvement is a selfish "hobby." Refusing to "loot" the community by "gouging" out profits at a rate of 28% is the breach of a fiduciary duty. And the nobility of participating in Performing Arts while publishing a newspaper that supports them becomes an unpardonable conflict of interest. Yet as acknowledged by Cox's own valuation expert, community acceptance is everything to a newspaper. [Expert Report of Owen Van Essen, at 8; "the degree of community acceptance has an important influence on value."]. This is because community acceptance is directly related to circulation, and the volume of circulation is directly related to level of advertising rates – the mother's milk of newspaper revenue.

There was a time, not so very long ago, before the coming of the "chain newspapers" when NJC's existing business plan, combining good corporate citizenship with reasonable profit levels, was typical. That day may be fast disappearing, but this Court must not hasten its arrival by ruling that support of a community's cultural institutions diminishes the newspaper's value, and that a newspaper's value is to be measured solely by the maximization of its immediate profit margin.

## STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

For many years, NJC has supported local civic projects important to the newspaper's long-term economic interests, its goodwill and community acceptance, and its commitment to the cultural well-being and development of the Daytona Beach community, including the Seaside Music Theater, a not-for-profit theater in Daytona Beach, Florida. In late 2000, following an apparent change in Cox's acquiescence in NJC's support for cultural projects within NJC's direct market, NJC's CEO, Herbert Davidson, Jr., asked the corporation's attorney, Jonathan Kaney, to give his legal opinion regarding the potential strength of an anticipated minority shareholder suit challenging NJC's support for the Seaside Music Theater as contrary to the best interests of the corporation. (D.E. 103 Kaney Aff. ¶ 7.)

On November 9, 2000, Mr. Kaney presented Mr. Davidson with a 24-page legal Memorandum (the "SMT Memo") analyzing the potential claims for breach of fiduciary duty and mismanagement which Cox could assert against NJC and its Board of Directors. (SMT Memo at 1 & 4; see D.E. 107 March 17, 2005 Notice of Filing Document Under Seal.) Mr. Kaney expressly states in the Memorandum that he is playing the role of devil's advocate by "adopt[ing] the adverse perspective and critical voice while suppressing my own advocacy." (SMT Memo at 1.) The SMT Memo briefly describes the expenditures made by NJC on the

Seaside Music Theater from 1992 through 2000, the decisionmaking processes involved in making those expenditures, and the relationship between NJC and SMT. (SMT at 6-10.) The SMT Memo then describes in detail the various claims which in Kaney's opinion Cox might assert, presents analyses of his impressions and opinions of them under applicable law, and provides Mr. Kaney's legal conclusions regarding the likely outcome of such a suit. (*See generally* SMT Memo.) Finally, the SMT Memo concludes by making some recommendations to NJC intended to minimize the risk of an unfavorable outcome if Cox were to sue NJC and its Board. (SMT Memo at 18-24.)

Thereafter, Cox filed an eleven-count Complaint against NJC and its officers and directors, alleging that NJC's support for the Seaside Music Theater constituted a breach of fiduciary duty because the expenditures were not in the best interests of the corporation and were instead made to further the personal interests of its officers and directors. (D.E. 1.) Thus, the allegations of the Cox complaint are precisely those which NJC's attorney analyzed and assessed in the SMT Memo.

Cox's fourth request for production of documents demanded that NJC produce the SMT Memo. NJC objected asserting the attorney-client privilege. Cox then moved to compel production of the SMT Memo under *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), which holds that shareholders suing their corporation for breach of fiduciary duty and for corporate waste may discover communications otherwise protected by the attorney-client privilege upon a showing of good cause. (D.E. 100.) The Magistrate concluded that *Garner* provided the applicable test and that Cox satisfied its burden of showing good cause to compel discovery of the SMT Memo. (D.E. 106.) On April 20, 2005, this Court affirmed the Magistrate. (D.E. 116.)

NJC then moved to vacate the Magistrate's Order and for reconsideration of this Court's Order affirming it. (D.E. 117.) NJC argued that the Magistrate's ruling assumed a "community of interest" between Cox and the majority shareholders of NJC that does not exist with respect to attorney-client communications about a possible suit by the minority shareholder against the corporation, its directors, and majority shareholders, and that, in any event, Plaintiff had not shown good cause to obtain NJC's privileged communications. This Court denied NJC's motion, ruling the SMT Memo is discoverable. (D.E. 120.) This motion addresses the separate issue of whether the SMT Memo's may be admitted in evidence at trial.

On June 15, 2005, NJC filed *Daubert* Motions to exclude Plaintiff's expert witness testimony from Owen D. Van Essen, William Jennings, and Dean Bonham. (D.E. 141, 142, 144.) Cox responded in opposition to the Motions on July 19, 2005. (D.E. 160, 161, 162.) These Motions were heard by the Magistrate Judge on August 18, 2005. (Ex. 4 hereto.) At the conclusion of the argument, the Honorable Karla Spaulding denied the Motions without prejudice, stating that she did not want to "tie the hands of the District Court," and that this Court should decide whether Cox's expert testimony should be excluded. This motion renews the *Daubert*-based motions in limine as to Cox's expert witnesses, and broadens the Defendants' motion in limine to exclude the Cox evidence of asserted corporate misconduct not directly related to the "fair value" of Cox's minority interest in NJC.

## ARGUMENT

This Court is authorized by Federal Rules of Civil Procedure 16(c)(3) and Federal Rules of Evidence 104(a) to make advance rulings on the admissibility of evidence, including the testimony of experts and the determination of privileges. For the reasons set forth below, the

Court should rule to now exclude all evidence of alleged misconduct by Defendants, Plaintiff's experts' testimony, and the SMT Memo.

I. **EVIDENCE OF ALLEGED WRONGDOING BY DEFENDANTS IS NOT RELEVANT TO THE DETERMINATION OF FAIR VALUE AND SHOULD BE EXCLUDED AT TRIAL.**

The sole issue to be determined at trial is the "fair value" of Cox's shares of NJC stock. Nevertheless, Cox seeks to introduce extensive evidence of acts and decisions by NJC directors which Cox contends constituted wrongful conduct. A proceeding to determine "fair value" is a no-fault proceeding. Allegations of fault or wrongdoing by either party are irrelevant in a valuation proceeding. *In re Pace Photographers, Ltd.*, 530 N.Y.S. 2d 67, 71 (N.Y. 1988); *Friedman v. Beway Realty Corp.*, 661 N.E.2d 972 (N.Y. 1995); *Gerzof v. Coons*, 563 N.Y.S.2d 458 (N.Y. App. Div. 1990). "[T]he trial court's findings on the issue of wrongdoing were superfluous in light of the fact, recognized by both courts, that respondent had elected to buy petitioner's shares pursuant to Business Corporation Law §1118. Fixing blame is material under 1104-a [New York's dissolution statute] but not under 1118 [New York's election statute]." *In re Pace*, 530 N.Y.S. 2d at 71. As observed in the Official Comment to the Model Business Corporation Act explaining Fla. Stat. §607.1436(6), the "entry of an order under either subsection (c) [§607.1436(3)] or (e) [§607.1436(5)] results in a dismissal, with prejudice, of the dissolution proceeding under section 14.30(2) [§607.1430(3)] and terminates all rights of petitioners as a shareholder. Thus, the order also terminates all claims that the petitioner may have had in his capacity as shareholder, and the value of such claims must either be asserted as part of the 'fair value' of the petitioner's shares or [be] forever lost except as provided in subsection (g) [§607.1436(7)]." Official Comment, Model Business Corporation Act (1997 Supp.), pp. 14-152-3.

New York courts[1] have recognized a solitary and narrow exception to the general rule that allegations of wrongdoing are irrelevant in an "election to purchase" litigation. Alleged misconduct underlying a petition for dissolution may be relevant in such a case only if it is established by expert testimony to have had impact on the fair value of the shareholder's minority shares. *See Gerzof v. Coons*, 563 N.Y.S.2d 458, 459 (N.Y. App. Div. 1990). In *Gerzof*, the Appellate Court found that the plaintiff was entitled to discovery related to alleged wrongdoing and announced that:

> [T]he question as to whether the alleged misconduct by Coons, if proven, adversely impacted upon the 'fair value' of the corporation, should be developed by expert testimony before the referee for his consideration and determination in accordance with accepted valuation methodologies.

Pursuant to *Gerzof*, evidence of alleged wrongdoing is admissible only if the expert testimony shows the impact, if any, of such wrongdoing on the "fair value" of Cox's minority interest in NJC. Any adjustment to that "fair value" is dependent upon: (1) Cox establishing wrongdoing; and (2) Cox establishing the impact of such wrongdoing on the fair value of Cox's minority interest by expert testimony using accepted valuation methodology.

Although Cox proposes to present a substantial amount of testimony and a large number of exhibits regarding Defendants' alleged wrongdoing, Cox will not present any expert testimony

---

[1] Neither Fla. Stat. §607.1436 nor Florida common law defines the "fair value" of a minority shareholder's interest in a closely held corporation. *G&G Fashion Design, Inc. v. Garcia*, 870 So. 2d 870, 871 (Fla. 3d DCA 2004). "However, case law interpreting New York's similar statutory provisions, to which we have looked in the past for guidance, confirms that 'fair value' rests on determining what a willing purchaser in an arm's length transaction would offer for an interest in the subject business." *Id.*, citing *In re Seagroatt Floral Co., Inc.*, 583 N.E. 2d 287 (N.Y. 1991). *See also Munshower v. Kolbenheyer*, 732 So. 2d 385, 386 (Fla. 3d DCA 1999) (finding New York law persuasive in resolving Florida disputes regarding value of closely held corporations). In ruling on a discovery motion earlier in this case, Magistrate Judge Spalding acknowledged that, "because New York has an election statute similar to the Florida election that has been involved in this case, Florida courts look to New York law in resolving issues under the Florida election statute." March 7, 2005 Order at 8, n.1. (D.E. 106.)

as to the extent, if any, the "fair value" of its shares of NJC stock suffered an adverse impact by Defendants' alleged acts of wrongdoing. Cox's only valuation expert, Mr. Van Essen, has acknowledged that his valuation is independent of any past conduct or business plan of NJC. His valuation is based exclusively on the "comparable sales" approach which identifies sales of newspapers of similar size located in similar markets, and assumes a willing purchaser would pay a comparable amount for NJC, irrespective of how the newspaper has been run in the past, or its past profitability. (Van Essen Rep. 48-49, 96-97.) Cox's other expert witnesses testify as to the *fact* of alleged "waste" by NJC, but not as to its impact on the value of Cox's minority interest. (D.E. 141, 142, 144). Because Cox offers no expert opinion which is essential to establish the relevancy link between the alleged wrongdoing and the fair value of Cox's shares of NJC stock, Cox should be precluded from introducing all evidence of Defendants' alleged wrongdoing at trial.

## II. FOR THE REASONS STATED IN NJC'S PREVIOUSLY FILED *DAUBERT* MOTIONS, AND AT ORAL ARGUMENT BEFORE THE MAGISTRATE JUDGE, THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES SHOULD BE EXCLUDED FROM TRIAL.

On June 15, 2005, NJC filed its *Daubert* Motions to exclude the testimony of Cox's valuation expert witness, Owen D. Van Essen (Ex. 1 hereto; D.E. 141), to exclude the testimony of Cox's forensic accounting expert, William L. Jennings, and certain other named Cox experts (Ex. 2 hereto; D.E. 142); and to exclude the testimony of Cox's expert witness on naming rights Dean Bonham (Ex. 3 hereto; D.E. 144). These Motions were argued at a hearing before The Honorable Magistrate Judge Karla R. Spaulding on August 18, 2005. A transcript of that hearing has been made (Ex. 4). NJC adopts the arguments made in these Motions and supporting memoranda of law, as well as its arguments as reflected in the hearing transcript, and incorporates them in their entirety by reference. NJC will not otherwise present or summarize

their contentions herein, but asks this Court to consider them as set forth in full in these Exhibits. The Magistrate Judge denied them without prejudice to renewal before this Court to preclude "tying this Court's hands" with respect to the evidence to be admitted at trial. NJC asks that the Court grant the *Daubert* Motions based upon the arguments made, and authorities cited, in the attached previously filed memoranda, and the arguments presented to the Magistrate Judge.

### III.   THE SMT MEMO IS NOT ADMISSIBLE EVIDENCE.

The SMT Memo was prepared by NJC's counsel and analyzes anticipated claims which Cox might assert based upon NJC's promotional support for the Seaside Music Theater. Pursuant to the work product and attorney-client privileges and Rule 403 of the Federal Rules of Evidence, Defendants move to exclude the SMT Memo on the following grounds:

- A. The SMT Memo is protected from disclosure at trial by the work product and attorney-client privileges.

- B. The Magistrate erroneously compelled disclosure of the SMT Memo; therefore, it cannot be admitted against NJC.

- C. Even assuming Cox was entitled to review the SMT Memo, it may not be introduced at trial because under Florida law only the board of directors may waive the attorney-client privilege.

- D. The SMT Memo consists essentially of inadmissible legal conclusions.

- E. The SMT Memo may not be introduced at trial because its minimal probative value is far outweighed by the danger of unfair prejudice to SMT, confusion of the issues, and the degree to which it would lengthen the trial.

### A.   The SMT Memo Should Be Excluded From Trial Because it is Protected by the Attorney-Client and Work Product Privileges.

The attorney-client privilege applies to any confidential communication between a lawyer and his client. Fla. Stat. § 90.502. The rule protects those communications from disclosure, *id.*, and renders them inadmissible at trial. *See, e.g.,* Fed. R. Evid. 104, *Chase Manhattan Bank, N.A.*

*v. Turner & Newall, PLC,* 964 F.2d 159, 164, (2d Cir. 1992); *State v. Sandini,* 395 So. 2d 1178, 1181 (Fla. 4th DCA 1981).

"The work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or by or for that party's attorney acting for his client." *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland,* 131 F.R.D. 596, 600 (M.D. Fla. 1990) (citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)); *see also* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495 (1947). The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Aldman,* 134 F.3d 1194, 1196 (2d Cir. 1998) (*quoting Hickman,* 329 U.S. at 510-11)). "It is viewed as promoting the adversary system since it allows attorneys to be free to prepare their cases without fear that their work product will be used against their clients." *RTC v. Mass. Mut. Life Ins. Co.,* 200 F.R.D. 183, 188 (W.D.N.Y. 2001).[2]

Although the work product doctrine normally operates to preclude discovery of attorney materials, the Supreme Court has explained that "the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as discovery during pretrial discovery, could disrupt the orderly development and

---

[2]There are two types of work product created under Rule 26(b)(3). First, "fact work product" consists of "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed. R. Civ. P. 26(b)(3). Second, there is "opinion work product" which consists of "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). Documents which contain opinion work product "are afforded absolute immunity from discovery." *Federal Deposit Ins. Corp.,* 131 F.R.D. at 600; *United States v. Pepper's Steel & Alloys, Inc.,* 132 F.R.D. 695, 698 (S.D. Fla. 1990) ("This 'opinion' work product is absolutely immune from discovery."); *Board of Trustees of Leland Stanford Jr. Univ. v. Coulter Corp.,* 118 F.R.D. 532, 534 (S.D. Fla. 1987) (same) (collecting cases). The SMT Memo is essentially opinion work product.

presentation of his case." *United States v. Nobles*, 422 U.S. 225, 239 (1975). Thus, it is well settled that evidence will be excluded from trial if it is protected in the work-product privilege. *See, e.g., United States v. American Tel. & Tel. Co.*, 524 F. Supp. 1381, 1389 (D.D.C. 1981) (compelled testimony of Department of Justice lawyers excluded where "work product . . . privilege[] would directly be implicated by their testimony . . ."); *United States v. Walker*, 910 F. Supp. 861, 864 (N.D.N.Y. 1995) (Government was precluded from introducing defendant's work-product at trial).

The SMT Memo is protected by the attorney-client privilege because it is a confidential communication between NJC and its attorney. It is also quintessential opinion work product because it was prepared in anticipation of potential litigation brought by Cox, and it contains NJC's attorney's mental impressions, conclusions, and opinions regarding the very breach of fiduciary duty claims asserted by Cox in this case. (*See* SMT Memo, D.E. 108.) Accordingly, the document should be excluded from the trial. Indeed, NJC would be severely prejudiced, and the adversarial process undermined, if Cox were permitted to rely upon NJC's attorney's legal conclusions and opinions regarding Cox's claims.

### B. The SMT Memo Should Be Excluded Because it is Privileged and the Magistrate Erroneously Compelled Its Discovery.

Florida Statute Section 90.508 provides:

> Evidence of a statement or other disclosure or privileged matter is inadmissible against the holder of the privilege *if the statement or disclosure was compelled erroneously by the court* or made without opportunity to claim the privilege.

Fla. Stat. § 90.508 (emphasis added). *See also Myron v. Doctors Gen'l Hosp., Ltd.*, 704 So. 2d 1083, 1090 (4th DCA 1997) (reversing trial court where privileged reports were admitted at trial after trial court had erroneously compelled their disclosure).

In *Garner v. Wolfinbarger*, 430 F.2d 1093, 1104-05 (5th Cir. 1970), the Court explained that a corporation may not invoke the attorney-client privilege against shareholders in a derivative suit where good cause is shown:

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the [attorney-client privilege] be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

The Magistrate concluded that Cox had shown good cause to overcome the privilege in this case.

However, as the 5th Circuit later explained in *In re International Systems & Controls Securities Litigation*, 693 F.2d 1235 (5th Cir. 1982), the *Garner* reasoning does not apply to attorney work product:

> *Garner's* rationale indicates that it was not intended to apply to work product. *Garner* is premised upon the "mutuality of interest" between shareholder and management. This "mutuality of interest" may exist for the attorney-client privilege. But once there is sufficient anticipation of litigation to trigger the work product immunity, we think this mutuality is destroyed. To hold otherwise would be to ignore modern corporate realities. The work product privilege is based on the existence of an adversarial relationship, not the quasi-fiduciary relationship analogized to in *Garner*. The joint attorney analogy discussed by the *Garner* court also does not apply to work product. Two parties anticipating litigation against each other do not have a common interest. It is not reasonable to indulge in the fiction that counsel, hired by management, is also constructively hired by the same party counsel is expected to defend against.

Id. at 1239. As shown above, the SMT Memo is not merely a privileged attorney-client communication, it also constitutes quintessential opinion work product that is not subject to disclosure under *Garner*. Thus, the Magistrate erred in compelling its disclosure. Because the Magistrate erroneously compelled the disclosure of the SMT Memo, it cannot be admitted against NJC. *See* Fla. Stat. § 90.508; *Myron v. Doctors Gen'l Hosp., Ltd.*, 704 So. 2d at 1090.[3]

---

[3]*Garner* applies only to derivative actions, not dissolution proceedings. NJC's election to purchase Cox's shares under Fla. Stat. § 607.1436 ended the derivative nature of this lawsuit and

(footnote continued on following page)

### C. Even Assuming Cox Was Entitled to Review the SMT Memo, It May Not Be Introduced at Trial Because Under Florida Law Only the Board of Directors May Waive the Attorney-Client Privilege.

The Magistrate concluded that Cox had shown good cause why NJC could not assert the attorney-client privilege against Cox because Cox, as a minority shareholder asserting a derivative claim, has a common interest in the attorney communications. (D.E. 106.) Order at 7-12, *citing Garner*, 430 F.2d at 1103. Even assuming the Magistrate correctly ruled that Cox is entitled to privately review the SMT Memo, Cox may not introduce it at trial and thereby waive the privilege because under Florida law "[t]he power to exercise the corporate lawyer-client privilege rests with the corporation's management." *Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506, 507 (Fla. 2d DCA 1988) ("[A]n individual stockholder, officer and director has no authority to waive or assert the privilege against the wishes of the corporation's board of directors."); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."). *C.f. Garner*, 430 F.2d at 1104 (where court order disclosure of privileged communications to minority shareholders can "freely avail itself of protective orders, a familiar device to preserve confidentiality in trade secret and other cases where the impact of revelation may be as great as in revealing a communication with counsel. Accordingly, the SMT Memo should be excluded at trial.

---

any applicability of *Garner*. Furthermore, *Garner* was premised on the flexibility of a federal court to fashion common law exceptions to attorney client privilege under Fed. R. Evid. 501. Florida's statutory privilege allows for no such flexibility. Fla. R. Evid. 501; *see also Hoiles v. Superior Court*, 204 Cal. Rptr. 111, 115 (Cal. Ct. App. 1984). Finally, *Garner* does not apply to closely held corporations such as NJC where corporate counsel's relationship is with the dominant shareholder. *Agster v. Barmada*, No. GD98-10088, 1999 WL 1577979, at *368 (Pa. Ct. Com. Pleas Oct. 21, 1999). Even assuming the *Garner* doctrine applied to the SMT Memo, which it does not, the Magistrate misapplied the *Garner* factors for the reasons set forth in NJC's Motion to Reconsider Its Ruling Affirming Magistrate's Order and Motion to Stay. *See* Exhibit 5 hereto. (D.E. 117).

D. **The SMT Memo Should Be Excluded Because it Consists Primarily of Inadmissible Legal Conclusions.**

"A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Thus, legal conclusions should not be admitted at trial. *Id.* (testimony regarding whether insurer had a duty to hire tax counsel was inadmissible); *United States v. Oliveros*, 275 F.3d 1299, 1306 (11th Cir. 2001) (district court properly excluded attorney's testimony regarding statutorily-prescribed immigration procedure). In *Konikov v. Orange County, Fla.*, 290 F. Supp. 2d 1315 (M.D. Fla. 2003), this Court held that an attorney could not testify as to the constitutionality of an Orange County ordinance because "in the Eleventh Circuit, the judge is the jury's only source of law. The judge decides the content of the law, and instructs the members of the jury on the applicability of the law to the facts of the case. . . . [A]n attorney[] may not testify as to the constitutionality of a law or as to the legal implications of conduct.". *Id.* at 1318.

The SMT Memo consists almost exclusively of NJC's counsel's devil's advocate legal opinions regarding the legality of NJC's investment in the Seaside Music Theater. (D.E. 108.) Because these legal opinions are inadmissible, the SMT Memo should be excluded. *See Konikov, supra.*

E. **Any Probative Value in the Memo is Substantially Outweighed by the Danger of Unfair Prejudice and Confusion of the Issues.**

Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Any probative value in the SMT Memo is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, as well as the considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[4]

The SMT Memo is not relevant because if offers no probative evidence as to the valuation of Cox's shares. And even if the SMT Memo were somehow relevant to the "fair value" issue, it has little probative value. The few facts contained in it all are available from other sources. NJC spent less than six million dollars on the SMT from 1992 to 2000. Cox's alleged entitlement to 47.5% of this amount is a minor consideration relative to the $116 million discrepancy in the parties' valuation proposals. While the probative value of the SMT Memo is extremely limited, its admission presents great danger of unfair prejudice and confusion of the issues because it is filled with conclusions about alleged NJC misconduct that have no bearing on the value of Cox's shares. *See supra* at 6-8.

Furthermore, the SMT Memo is comprised almost entirely of opinion testimony that must be excluded under Rule 403. The legal and factual conclusions in the SMT Memo are expressly "speculative." (Memo at 1.) The SMT Memo was written by Kaney while "suppressing [his] own advocacy[]" and adopting the "adverse perspective" of the minority shareholder. (*Id.*) Presumably, Kaney suppressed facts and conclusions favorable to NJC. The Memo is thus akin to improper expert opinion testimony. *See, e.g., United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (expert opinion must be based on reliable methodology and helpful to the trier of fact); *Hull v. Merck & Co.,* 758 F.2d 1474, 1477 (11th Cir. 1985) (expert opinion based on "speculative" assumptions is "potentially confusing" and therefore properly excluded from

---

[4]Rule 403 applies in bench trials as well as jury trials. *See, e.g., Sank v. City Univ. of N.Y.,* 112 Fed. Appx. 761, 763 (2d Cir. 2004) ("district court acted well within its discretion pursuant to Fed. R. Evid. 403 in denying [plaintiff's] request to introduce evidence"); *In re Unisys Sav. Plan Litig.,* 173 F.3d 145, 158 (3d Cir. 1999) (Rule 403 operates to exclude unhelpful witness testimony from bench trial).

evidence). What is more, the speculative opinions in the SMT Memo are inappropriate testimony on the legal implications of conduct that will not assist the trier of fact but rather invade the province of the Court. *See, e.g., Montgomery*, 898 F.2d at 1541 ("This was a legal conclusion, and therefore should not have been admitted."); *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1376 (S.D. Fla. 2005) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citation omitted).

Finally, the opinions of Mr. Kaney in the SMT Memo are core opinion work product. *Nobles*, 422 U.S. at 238 ("[a]t its core, the work-product doctrine shelters the mental impressions of the attorney"). Courts have consistently held that work product is inadmissible under Rule 403 because its probative value is far outweighed by the danger of unfair prejudice and confusion of the issues. *See, e.g., Stansberry v. Schaad Props.*, No. Civ. A. 88-0163-A, 1991 WL 11015266, at *1 (W.D. Va. May 2, 1991) (the "court will protect against work-product disclosures at trial and in accordance with Rule 403 . . . so as to avoid 'unfair prejudice.'"); *AT&T*, 524 F. Supp. at 1389 (Lawyers' "expert" opinions are excluded under Rule 403 because they are of "little benefit to the Court . . . work-product and . . . the public interest in upholding th[is] privilege[] far outweighs the minimal probative value of their testimony."); *see also U.S. v. Walker*, 910 F. Supp. 861, 864 (N.D.N.Y. 1995) (excluding work product testimony under Rule 403).

Accordingly, the SMT Memo should not be admitted under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Further, any facts in the Memo are available from other sources and its admission would be a waste of time amounting to a needless presentation of irrelevant evidence.

## CONCLUSION

For the foregoing reasons, this Court should enter an order excluding all evidence of alleged misconduct by Defendants, Plaintiff's experts' testimony, and the SMT Memo.

Respectfully submitted,

| | |
|---|---|
| COBB & COLE<br>*Counsel for Defendants*<br>Bruce A. Hanna, Esq.<br>Florida Bar No. 867683<br>Thomas J. Leek, Esq.<br>Florida Bar No. 116408<br>150 Magnolia Avenue<br>P.O. Box 2491<br>Daytona Beach, Florida 32115<br>Tel: (386) 255-8171<br>Fax: (386) 248-0323<br>E-mail: bhann@ccb.com<br>E-mail: tleek@ccb.com | JORDEN BURT LLP<br>*Co-Counsel for Defendants*<br>Suite 500<br>777 Brickell Avenue<br>Miami, Florida 33131<br>Tel: (305) 371-2600<br>Fax: (305) 372-9928<br><br>By: /s Richard J. Ovelmen<br>Richard J. Ovelmen, Esq.<br>Florida Bar No. 284904<br>E-mail: rjo@jordenusa.com |

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the 19th day of September, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following unless otherwise indicated:

John A. DeVault III, Esq.  
Courtney K. Grimm, Esq.  
Bedell, Dittmar, DeVault, Pillans & Coxe  
The Bedell Building  
101 East Adams Street  
Jacksonville, Florida 32202  
E-mail: jdevault@bedellfirm.com  
E-mail: cgrimm@bedellfirm.com  

*Counsel for Plaintiff*

Peter C. Canfield, Esq.  
Dow, Lohnes & Albertson, PLLC  
Suite 1600  
One Ravinia Drive  
Atlanta, Georgia 30346  
E-mail: pcanfield@dlalaw.com  

*Counsel for Plaintiff*

                                            s/ Richard J. Ovelmen  
                                                  Attorney

142387