```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF FLORIDA
                         ORLANDO DIVISION

COX ENTERPRISES, INC., a        )
Delaware corporation,           )
                                )
     Plaintiff,                 )
                                )
vs.                             )
                                )
NEWS-JOURNAL CORPORATION, a     )
Florida corporation, HERBERT    )
M. DAVIDSON, JR., MARC L.       )
DAVIDSON, JULIA DAVIDSON        )CIVIL ACTION
TRUILO, JONATHAN KANEY, JR.,    )FILE NO.6:04-CV-698-ORL-28-KRS
DAVID KENDALL, ROBERT TRUILO,   )
GEORGIA KANEY, and PMV, INC.,   )
a Florida corporation,          )
                                )
     Defendants.                )
_____)
```

**PLAINTIFF COX ENTERPRISES, INC.'S MEMORANDUM
REGARDING TERMS OF PURCHASE**

In accordance with the Court's June 30, 2006 Order (Doc. No. 251), Plaintiff Cox Enterprises, Inc. ("Cox") submits its position regarding reasonable terms for News-Journal Corporation's ("NJC") purchase of Cox's $129,200,000 interest in NJC.

Because the election statute, section 607.1436, Florida Statutes, contemplates payment of this purchase price (absent dissolution) within 10 days after the conclusion of any

appeal,[1] and because defendants have already publicly announced their intention to appeal,[2] the question before the Court is what terms should govern the purchase once the appeal is concluded and what obligations, if any, should be imposed upon defendants in the interim.

As the Court noted in its Order, section 607.1436(5), Florida Statutes, provides that:

> Upon determining the fair value of the shares, the court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate, which may include payment of the purchase price in installments, when necessary in the interests of equity, provision for security to assure payment of the purchase price and any additional costs, fees, and expenses as may have been awarded.

As the section further provides:

> Interest may be allowed at the rate and from the date determined by the court to

---

[1] See January 18, 2006 Cox Response to NJC Motion Regarding the Terms of the Court's Order(Doc. No. 247).

[2] Tippen Davidson, Editorial, We will fight back: Local ownership serves community, Daytona Beach News-Journal, July 6, 2006, at 04A, available at http://www.news-journalonline.com/ special/lawsuit/070506fight.htm, dated July 5, 2006 ("the District Court ruling may be -- and will be -- appealed.").

>           be equitable; however, if the court finds
>           that the refusal of the petitioning
>           shareholder to accept an offer of payment
>           was arbitrary or otherwise not in good
>           faith, no interest shall be allowed.

Cox respectfully submits that pursuant to this section the Court should exercise its discretion to require NJC to make full and complete payment for Cox's shares immediately (i.e., within 30 days) following the conclusion of NJC's appeal; afford Cox interest on the purchase price ($129,200,000) at the Florida statutory rate from the valuation date through this required date of payment; and impose certain conditions on defendants by way of security in the interim.

Requiring full and complete payment up front is the statutory norm and, in this case, dictated by the record. Given that it was defendants' decision to elect to have NJC repurchase Cox's shares, there is no reason to presume nor any basis in the record from which to conclude that Cox should now be required to, in effect, finance the defendants' election by accepting payment in installments. To the contrary, given defendants' extended and, to this day, unrepentant pattern and practice of self-dealing and corporate waste and deception, see, e.g., Tippen Davidson, Editorial, We will fight back,

3

supra (promising "to continue operating as we have"), requiring Cox to accept payment in installments would plainly and unfairly subject Cox to considerable risk. Requiring Cox to accept payment in installments would be particularly inequitable given the Court's determination that, again, by virtue of NJC's election, Cox cannot recover from defendants as damages the many millions of dollars defendants have wrongfully removed from NJC in the past.

While permitting payment of the purchase price in installments would be inequitable to Cox, requiring full and immediate payment would be in no way inequitable to defendants. It is defendants who made the election two years ago to purchase Cox's shares, thus extinguishing the very real prospect, acknowledged by defendant Jon Kaney, of millions of dollars of personal liability (P. Trial Exh. 125). In doing so, defendants, according to their own public statements, made "plans for every contingency." Jay Stapleton, <u>Judge determines value of News-Journal shares</u>, Daytona Beach News-Journal, July 1, 2006, at 01A, <u>available at</u> http://www.news-journalonline.com/special/lawsuit/070106.htm (quoting Tippen Davidson); E. Horowitz and L. Lelis, <u>Newspaper CEO brings arts dreams to life: Tippen Davidson's push to build the News-Journal Center</u>

4

sparked a legal battle, Orlando Sentinel, January 27, 2006, at A.1, available at http://pqasb.pqarchiver.com/orlandosentinel/advancedsearch.html (search under author "Etan Horowitz" and date range "January 27, 2006") ("Davidson has said that no matter what price the judge puts on the shares, he intends to purchase Cox's interest, though he will have to borrow money to do so.  In a letter sent to News-Journal employees, Davidson wrote that the banking arrangements are complete but that there will probably be 'belt-tightening and corner-cutting.'").

The nature of defendants' "plans" is unclear.[3]  But whether or not defendants have the will to make good forthwith on their commitment to pay Cox its due, that defendants have the "way" cannot be doubted.  The record is uncontradicted that the

---

[3] Defendants have not disclosed to Cox the specifics of the banking arrangements they have alluded to publicly.  In June, defendants provided Cox with NJC's 2005 audited financial statements, which noted that "[t]he company secured financing commitments for the repurchase of [Cox's] shares on November 18, 2005, with continued extensions from the lender through August 31, 2006.  If a settlement is not reached by the expiration date, the Company anticipates that it will be able to renew the commitment letter under similar terms." (See Declaration of Owen D. Van Essen, attached hereto as Exhibit A, at tab A-4.) After the Court's June 30, 2006 ruling, Cox requested from defendants a copy of the commitment letter and any documents referenced therein and agreed to treat the documents as confidential pursuant to the protective order previously entered by the Court.  However, defendants refused to provide the documents unless Cox agreed to enter into a new confidentiality agreement, an unusual and unnecessary condition that Cox has rejected.

purchase of Cox's shares will leave defendants with full ownership and control of a profitable newspaper (and other viable businesses within NJC) that would command on the open market a price considerably in excess of over twice the amount of the ordered payment. June 30, 2006 Order at 15-17 & n.10, 23. The record is also clear that should defendants ever decide to operate this newspaper as a newspaper rather than to support their "aesthetic pleasures," not only will the newspaper, its staff and the Daytona community greatly benefit, but NJC will be stronger financially and operate much more profitably immediately. In any event, even should defendants continue their established ways and let this moment of opportunity pass, NJC and defendants plainly have the wherewithal, one way or another, to immediately pay the purchase price of Cox's shares.

In fact, given NJC's traditional revenue growth, there is every reason to believe that, at the conclusion of its appeal, NJC, using only conventional financing, will be able to make full and immediate payment of the purchase price plus interest simply by holding costs at today's levels, without defendants taking on a new equity partner or otherwise materially changing the way defendants do business.

NJC's revenue grew 7% in 2005, more than the 6% annual increase forecast at trial by Cox's valuation expert Owen Van Essen, and its EBITDA increased 30%. (See Exhibit A, Declaration of Owen D. Van Essen). Assuming continued revenue growth consistent with Florida trends, if defendants are willing to become better stewards and make a series of adjustments to normalize expenses – cuts that would in no way damage the quality of the newspaper – NJC's EBITDA would increase to an even greater extent. Id. But even if defendants are not so willing, NJC, merely by holding expenses at today's levels, would be expected to generate in 2007 – by the time NJC's appeal would likely conclude – approximately $23 million in EBITDA. Id. As lenders often make loans to entities such as NJC of 7 times EBITDA, this $23 million in EBITDA would provide NJC with borrowing capacity in excess of $160 million, more than enough to pay the purchase price for Cox's shares plus interest. Id.

In addition to requiring NJC to make full and immediate payment of the purchase price upon the conclusion of NJC's appeal, the Court should afford Cox interest on the purchase price ($129,200,000) at the Florida statutory rate from the valuation date through this required date of payment.

7

Section 607.1436(5) authorizes the Court to allow interest on the purchase price "at the rate and from the date determined by the court to be equitable." Cf. In re Penepent Corp. Inc., 198 A.D.2d 782, 783 (N.Y. App. Div. 1993) (Court properly exercised its discretion in awarding interest on the fair value of petitioner's shares).[4]

Here, the appropriate interest rate is the Florida statutory interest rate, as the cause of action herein is a creation of Florida Statute. Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1447 (11th Cir. 1998) (noting that "[i]n the absence of a controlling statute, federal courts' choice of a rate at which to determine the amount of prejudgment interest to be awarded is also a matter for their discretion" and "[t]hat choice is usually guided by principles of reasonableness and fairness," by state law, and by rate used by federal courts in awarding post-judgment interest), cert. denied sub nom Nitram, Inc. v. M.A.N.

---

[4] In Morales v. Rosenberg, 919 So.2d 476, 479 (Fla. 3d DCA 2005), the only Florida case addressing the award of interest pursuant to Florida's election statute, section 607.1436(5), the Court found that the petitioning shareholder arbitrarily refused to accept reasonable offers of payment for her shares and was responsible for delaying the proceeding and, as such, an award of interest was not warranted. Here, Cox was never presented with any reasonable offer of payment nor has Cox delayed in any way this proceeding.

Gutehoffnungshutte GmbH, 525 U.S. 1068 (1999). Florida's current statutory interest rate is 9% (for 2004 and 2005 the rate was 7%). Fla. Stat. § 55.03; Florida Department of Financial Services, Statutory Interest Rates, http://www.fldfs.com/aadir/interest.htm.

As a matter of equity, as other states have recognized as a matter of statute, interest should accrue from May 10, 2004, the date as of which the fair value of Cox's shares were determined per section 607.1436(4), through the required date of payment. N.Y. Bus. Corp. Law § 1118(b) ("In determining the fair value of the petitioner's shares, the court, in its discretion, may award interest from the date the petition is filed to the date of payment for the petitioner's share at an equitable rate upon judicially determined fair value of [the] shares."). While NJC has continued to pay Cox to date an annual $1.254 million dividend, the amount of those dividends, determined unilaterally by defendants, pales in comparison to both the appropriate amount of interest and defendants' past and continuing waste of NJC assets, waste that the Court has determined cannot, by virtue of defendants' election, be recovered by Cox as damages.

Providing for the accrual of interest at the Florida statutory rate during NJC's appeal and through the required date of purchase of Cox's shares is also appropriate as a matter of security as authorized by section 607.1436(5). In January 2006, in response to NJC's motion regarding the terms of the Court's impending order as to fair value, a motion seeking a stay of execution without bond pending appeal (Doc. No. 246), Cox stated, and reiterates now, that it does not oppose such relief, provided that the order specifies that interest shall continue to run at the Florida statutory rate until the appeal concludes and payment is due. (Doc. No. 247).[5]

Lastly, particularly given the Court's findings regarding defendants' conduct, Cox submits that certain other security provisions be included with the terms of purchase as authorized by section 607.1436(5) as a safeguard during the pendency of NJC's appeal. Specifically, Cox requests that defendants:

1) grant Cox a first priority security interest in NJC's assets;

---

[5] Applying the statutory interest rate from May 10, 2004 to date, interest has already accrued (at the rate of 7 percent in 2004 and 2005 and 9 percent in 2006) in the amount of $21,270,214. From July 20, 2006 to the required date of payment it will continue to accrue (at the rate of 9 percent) in the amount of $31,857.53 per diem.

10

2) provide Cox monthly and quarterly financial statements and audited annual financial statements;

3) not, absent Court approval, dissolve, wind up or liquidate NJC or effect any sale, lease, transfer or other disposition of NJC stock or any material portion of NJC's assets or issue any equity securities; and

4) otherwise take no action adverse or detrimental to NJC's ability to pay and Cox's ability to collect the judgment.

These provisions are reasonable, do not disrupt NJC's business operations, and are necessary to provide Cox some modicum of protection through the appeal process.[6]

---

[6] Were the Court to permit NJC to purchase Cox's shares in any way other than by a full and complete payment of the $129,200,000 purchase price plus interest immediately upon conclusion of NJC's appeal, the record makes clear that effective protection of Cox's interest would require, in addition to continued oversight by the Court, much more stringent, broad and detailed conditions, including, by way of example, guarantees and pledges of stock of NJC (and subsidiaries) by defendants, including PMV, Inc., and their heirs, successors and assigns; prohibitions against the payment of dividends or other distributions (including repurchases or redemptions of NJC stock), appropriate limitations on bonuses, salary increases, affiliated transactions, and contributions (charitable, promotional or otherwise) to entities or persons in any way associated with defendants; insurance requirements; management requirements;

11

A proposed order reflecting Cox's suggested terms and conditions is attached hereto as Exhibit B.

>BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
>   Professional Association
>
>By s/John A. DeVault, III
>   John A. DeVault, III
>   Florida Bar No. 103979
>   Courtney K. Grimm
>   Florida Bar No. 953740
>   The Bedell Building
>   101 East Adams Street
>   Jacksonville, Florida 32202
>   Telephone:  (904) 353-0211
>   Facsimile:  (904) 353-9307
>
>           - and -
>
>DOW LOHNES, PLLC
>Peter C. Canfield
>6 Concourse Parkway, Suite 1800
>Atlanta, Georgia 30328-6117
>Telephone:  (770) 901-8800
>Facsimile:  (770) 901-8874
>
>Counsel for Plaintiff Cox Enterprises, Inc.

---

as well as other representations, warranties, affirmative, negative and financial covenants and other requirements that would be customary for deferred payment transactions of this nature and scope.

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this __20th__ day of July, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/EFF system which will send a notice of electronic filing to the following:

>Bruce A. Hanna
>bhanna@ccb.com
>
>Richard J. Ovelman
>rjo@jordenuse.com

>>s/John A. DeVault, III
>>John A. DeVault, III
>>Florida Bar No. 103979
>>E-Mail: jad@bedellfirm.com
>>The Bedell Building
>>101 East Adams Street
>>Jacksonville, Florida 32202
>>Telephone:  (904) 353-0211
>>Facsimile:  (904) 353-9307