```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF FLORIDA
                       ORLANDO DIVISION

COX ENTERPRISES, INC., a         )
Delaware corporation,            )
                                 )
       Plaintiff,                )
                                 )
vs.                              )
                                 )
NEWS-JOURNAL CORPORATION, a      )
Florida corporation, HERBERT     )
M. DAVIDSON, JR., MARC L.        )
DAVIDSON, JULIA DAVIDSON         )CIVIL ACTION
TRUILO, JONATHAN KANEY, JR.,     )FILE NO.6:04-CV-698-ORL-28-KRS
DAVID KENDALL, ROBERT TRUILO,    )
GEORGIA KANEY, and PMV, INC.,    )
a Florida corporation,           )
                                 )
       Defendants.               )
_____)
```

**COX'S MOTION FOR FEES AND EXPENSES AND**
**<u>MEMORANDUM OF LAW IN SUPPORT</u>**

Plaintiff Cox Enterprises, Inc. ("Cox"), pursuant to Florida Statutes § 607.1436(5) and the Court's Order of June 30, 2006 (Doc. No. 251), hereby moves this Court for entry of an Order awarding the fees and expenses of Cox's counsel and experts against Defendant News-Journal Corporation ("NJC"), and in support thereof states as follows:

1.   On May 11, 2004, Cox filed a multi-count Complaint against Defendants alleging that Defendants misused corporate funds and wasted corporate assets of NJC to the detriment of

Cox's interest as a minority shareholder in NJC. In response, Defendant NJC elected to purchase Cox's shares pursuant to Florida Statutes § 607.1436.

2. An eight day bench trial on the value of Cox's shares was held in December 2005.

3. On June 30, 2006, the Court entered an Order determining pursuant to Florida Statutes § 607.1436(4) that the fair value of Cox's 47.5% interest in NJC was $129.2 million. Separately, the Court considered pursuant to Florida Statutes § 607.1436(5) whether Cox "had probable grounds for relief under s. 607.1430(3)." The Court concluded that "Cox plainly had probable cause to establish that the assets of NJC were being misapplied and wasted by Defendants," and determined therefore, "that Cox is entitled to reasonable fees and expenses of its counsel and experts." (Doc. No. 251 at 27-33).

4. Cox's counsel, Bedell, Dittmar, DeVault, Pillans & Coxe, P.A. of Jacksonville and Dow Lohnes PLLC of Atlanta have rendered services and incurred expenses in their representation of Cox in this case through June 30, 2006, as

more fully described in the Declarations of John DeVault and Peter Canfield filed herewith.

5.  Cox seeks an award of its attorneys' fees and expenses, and its expert fees and expenses as follows:

| | |
|---|---:|
| **Bedell Firm - attorneys' fees** | $822,320.00 |
| **Dow Lohnes - attorneys' fees** | 638,875.00 |
| **Expenses of Counsel** | 154,147.33 |
| **Fees and Expenses of Expert Witnesses** | <u>727,690.13</u> |
| Total | $2,343,032.46 |

6.  In further support of its motion, Cox files herewith the Declaration of its expert, John Fisher, of the law firm of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A. as to the reasonableness of the attorneys' fees incurred by Cox in this matter.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 37(a)(2)(B), Federal Rules of Civil Procedure and Local Rule 3.01(g), United States District Court, Middle District of Florida, counsel for Cox certifies

that prior to filing this Motion, he conferred with counsel for Defendant NJC but they have been unable to agree to the relief requested by the Motion.

## **MEMORANDUM OF LAW**

Florida Statutes § 607.1436(5) provides that upon finding that the petitioning shareholder had probable grounds for relief under Florida Statutes § 607.1430(3), the Court may award to the petitioning shareholder reasonable fees and expenses of counsel and of any experts employed.

It is difficult to imagine more egregious factual findings determining probable cause to establish waste and misapplication of corporate assets than this Court's findings in this case:

- "As Dean Bonham, Cox's expert on the valuation of NJC's corporate waste, substantiated, NJC's decision to enter into the naming rights agreement made little sense from a business perspective.  Since the agreement was plainly born not of NJC's legitimate commercial interest, but of Tippen Davidson's desire to build a performing arts center, NJC and LACI neglected to engage in any negotiations.  Instead, Jonathan Kaney unilaterally determined the price of the agreement without so much as considering a discount for present value." (Doc. No. 251 at 29).
- "This might have been Defendants' worst abuse, but it was hardly their first.  The record is replete with evidence of corporate waste and questionable conduct by Defendants.  Kaney's opinion that NJC's expenditures

4

> could not 'be justified in relation to promotional expenditures [or] in relation to reasonably allowable corporate philanthropy' shows that, in fact, Kaney and the other defendants were perfectly aware of their misdeeds. Yet, rather than altering their behavior as Kaney urged, they persisted in using NJC as a means to indulge their personal interests in the arts." (Doc. No. 251 at 30).

- "[T]he record indicates that the predominant factor motivating Defendants in their various activities was their personal interests in the arts. By creating and supporting the Cultural Entities, Tippen and the others provided themselves with a ready vehicle for their aesthetic pleasures." (Doc. No. 251 at 31).

- "The business judgment rule only applies, however, when a business is operating according to a reasonable business model. It is not intended to serve as a shield for those who, like Defendants, have acted in their own personal self-interest." (Doc. No. 251 at 31).

- "Yet, even if some of Defendants' misdeeds may be justified by the defense of acquiescence, the greatest and most wasteful amongst them cannot. There can be no doubt, for instance, that Cox did not acquiesce to NJC's decision to enter into the naming rights agreement." (Doc. No. 251 at 31).

Based on these and other findings, this Court concluded:

> Having rejected all of Defendants' proffered justifications for NJC's extravagance, I find that Cox plainly had probable cause to establish that the assets of NJC were being misapplied and wasted by Defendants. Upon this finding, I further determine that Cox is entitled to reasonable fees and expenses of its counsel and experts.

(Doc. No. 251 at 32).

5

The Florida Supreme Court adopted the federal lodestar approach as the starting point in calculating a proper award of fees. <u>Bell v. U.S.B. Acquisition Co., Inc.</u>, 734 So.2d 403, 406 (Fla. 1999) (citing <u>Florida Patient's Compensation Fund v. Rowe</u>, 472 So.2d 1145, 1150-51 (Fla. 1985)). <u>See also</u>, <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).  Thus evaluating the reasonableness of attorney fees to be awarded, the Court looks at the number of hours reasonably expended by counsel multiplied by the attorneys' reasonable hourly rate, i.e., the lodestar.

The total of 5,274 hours expended by counsel for Cox (2,836 by Bedell firm attorneys, and 2,438 by attorneys from Dow Lohnes), were not only reasonable but essential.  The Declaration testimony of John Edwin Fisher, a highly respected trial attorney who has practiced for more than forty years in the Orlando area, on this point is persuasive:

> It is my opinion that the time devoted to this litigation as reflected on the invoices of both Bedell, Dittmar, DeVault, Pillans & Coxe, P.A. and Dow Lohnes PLLC was reasonable given the complexity and difficulty of the issues involved and the skill and effort of the defense . . . .

(Fisher Declaration ¶ 12).

The issue presented in this action, the valuation of Cox's 47.5% interest in NJC, was particularly complex, novel, and difficult and required the expenditure of considerable time by counsel to develop a knowledge and understanding of the issue and to research and effectively advocate to the Court. Significant time was also spent in connection with the 25 depositions taken in this matter throughout the country, consisting of both fact and expert witnesses. Further, counsel had to spend a significant amount of time obtaining discovery from Defendants and non-parties and responding to Defendants' challenges to the production of documents, which required motions and hearings before the magistrate judge but upon which Cox was successful. Defendants also challenged the testimony of many of Cox's experts which required extensive response memoranda and a hearing before the magistrate judge, which Cox successfully defended. Despite the magistrate judge's ruling, Defendants again challenged the testimony of many of Cox's experts by Motions in Limine, to which Cox responded by memoranda and was again successful. Defendants also filed a Motion for Partial Summary Judgment to which Cox's counsel spent substantial time in responding and which Motion was also denied. Lastly, Cox's counsel spent considerable time preparing for and trying this matter before

the Court for 8 days, resulting in a Final Judgment in its favor in the amount of $129.2 million, plus interest. (Doc. No. 263).

All of the time spent by Cox's counsel on these matters as well as the other aspects of the case was recorded and maintained in detailed time records and was essential to achieving the result obtained in this matter. Cox's counsel worked to avoid any duplication of effort and divided responsibilities among the attorneys and paralegals where appropriate to avoid duplication and to accomplish any tasks required most efficiently and cost effectively. Cox's counsel also achieved additional efficiencies by taking advantage, with respect to both discovery and decision making, of Dow Lohnes' extensive prior experience with Cox. Moreover, counsel for Cox have reviewed the billing records and eliminated excessive or redundant charges as well as time spent litigating against Defendant Lively Arts Center, Inc. ("LACI"). In particular, all time devoted to Cox's request for injunctive relief against LACI, LACI's Motion to Stay and LACI's Motion for Judgment on the Pleadings, on which LACI prevailed, have been deducted from the fees sought. Also, counsel have removed time spent in connection with Defendants'

August and October 2005 depositions of Plaintiff's naming rights expert Dean Bonham. As such, the fees Cox seeks to recover are only for those hours necessarily expended by its counsel to obtain the final judgment entered in its favor and are entirely reasonable.

Likewise, the hourly rates sought by Cox are reasonable. As stated by the Florida Supreme Court in Rowe, the prevailing market rate is "the rate charged in that community by lawyers of reasonably comparable skill, experience, and reputation, for similar services." 472 So.2d at 1151. The rates sought by Cox for the work of the Bedell firm and Dow Lohnes are comparable to, and in fact below, the prevailing rates customarily charged in Central Florida for legal services of a comparable or similar nature. (Fisher Declaration ¶¶ 13-14). The rates sought for the work of the Bedell firm were the firm's standard rates. Dow Lohnes' standard rates, although within the prevailing market rates charged in Atlanta and Washington, D.C., where Dow Lohnes has offices, as well as in Miami, where Defendants engaged co-counsel, have been reduced approximately 30%. (Fisher Declaration ¶ 14).

Accordingly, taking the number of hours reasonably expended by counsel and multiplying them by the reasonable

9

hourly rates of counsel, a lodestar of $1,461,195 is produced to which Cox is entitled to recover for attorneys' fees it incurred in obtaining the Final Judgment in its favor.

Furthermore, Cox incurred counsel expenses of $154,147.33, which expenses were reasonable. The expenses sought to be reimbursed are only those expenses necessarily incurred in case preparation and during the course of litigation as required to achieve the Final Judgment rendered herein. The expenses include deposition expenses, document production expenses, court reporter and mediation fees, and trial expenses. Routine office expenses such as postage, long distance telephone calls and facsimile charges have not been included. Also, expenses associated with any of the LACI matters, including court reporter fees, travel expenses and research expenses, or expenses associated with the August and October 2005 depositions of Dean Bonham, including travel expenses and deposition transcript expenses have been excluded.

Finally, as specifically authorized by Florida Statutes § 607.1436(5) and awarded by the Court in its June 30, 2006 Order, Cox is entitled to reasonable fees and expenses of its experts. Cox initially retained and disclosed four experts:

Owen Van Essen to value Cox's shares, Dean Bonham to value the naming rights for the Lively Arts Center, William Jennings to investigate and quantify NJC's corporate waste[1], and Donald Wiggins to consider economic factors applicable to Cox's investment in NJC and to rebut Hank Fishkind. Then, in rebuttal to Defendants' disclosure of experts[2], Cox disclosed two additional experts, Barbara Cohen, a newspaper marketing expert, and Frank Daniels, Jr. the retired president and publisher of The News and Observer Publishing Company, a Raleigh, North Carolina newspaper company acquired by Daniels' grandfather in 1894 that the Daniels family sold to the McClatchy Co. in 1995 for $373 million. Depositions of each of Cox's experts were taken by Defendants and each expert was prepared to testify at trial. Van Essen, Bonham, Jennings and Cohen did in fact testify at trial. Wiggins and Daniels, although prepared to testify, were not called to testify as Defendants at trial chose not to call three of their experts (Cowles, Fishkind and Gordon) to whom Wiggins and Daniel were

---

[1] Jennings and his staff analyzed over 100,000 pages of financial records produced by NJC and its auditors.

[2] Defendants initially disclosed seven experts, all of whom were deposed. At the time of the Pretrial Stipulation, Defendants withdrew one of their valuation experts (Frances Alford).

11

to offer rebuttal testimony. Cox's retention of its six experts which assisted it in preparing and advocating its case to the Court and responding to Defendants' contentions, was reasonable. The fees and expenses charged by these experts and incurred by Cox were reasonable and necessary to assist in the presentation of the case to the Court. Accordingly, their total fees and expenses of $727,690.13[3] are recoverable by Cox in addition to the $1,615,342.33 total fees and expenses of counsel.

WHEREFORE, in accordance with Florida Statutes § 607.1436(5) and the Court's June 30, 2006 Order, Plaintiff Cox Enterprises, Inc. respectfully requests this Court enter an order taxing the reasonable fees and expenses of counsel and its experts against Defendant News-Journal Corporation.

---

[3] The fees and expenses of Dean Bonham associated with the taking of his August and October 2005 depositions are not being sought and are not included in the total fees and expenses of Cox's experts.

12

> BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
>    Professional Association
>
> By s/John A. DeVault, III
>    John A. DeVault, III
>    Florida Bar No. 103979
>    Courtney K. Grimm
>    Florida Bar No. 953740
>    The Bedell Building
>    101 East Adams Street
>    Jacksonville, Florida 32202
>    Telephone: (904) 353-0211
>    Facsimile: (904) 353-9307
>
>        - and -
>
> DOW LOHNES, PLLC
> Peter C. Canfield
> 6 Concourse Parkway, Suite 1800
> Atlanta, Georgia 30328-6117
> Telephone: (770) 901-8800
> Facsimile: (770) 901-8874
>
> Counsel for Plaintiff Cox Enterprises, Inc.

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this ___12th___ day of October, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/EFF system which will send a notice of electronic filing to the following:

    Bruce A. Hanna
    bhanna@ccb.com

    Richard J. Ovelman
    rjo@jordenuse.com

                      s/John A. DeVault, III
                      John A. DeVault, III
                      Florida Bar No. 103979
                      E-Mail: jad@bedellfirm.com
                      The Bedell Building
                      101 East Adams Street
                      Jacksonville, Florida 32202
                      Telephone:  (904) 353-0211
                      Facsimile:  (904) 353-9307