**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**COX ENTERPRISES, INC.,**

         **Plaintiff,**

**-vs-**                                      **Case No. 6:04-cv-698-Orl-28KRS**

**NEWS-JOURNAL CORPORATION,
HERBERT M. DAVIDSON, JR., MARC L.
DAVIDSON, JULIA DAVIDSON TRUILO,
JONATHAN KANEY, JR., DAVID
KENDALL, ROBERT TRUILO, GEORGIA
KANEY, and PMV, INC.,**

         **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **INTERVENOR KATHY COUGHLIN'S MOTION FOR AN ORDER PROVIDING ENTITLEMENT TO AN AWARD OF ATTORNEYS' FEES AND COSTS (Doc. No. 456)** |
| **FILED:** | **October 6, 2008** |

| | |
|---|---|
| **MOTION:** | **INTERVENORS, LORI KOPP, CORY LANCASTER AND DONALD D. LINDLEY'S MOTION FOR AN ORDER GRANTING ENTITLEMENT TO ATTORNEYS' FEES AND COSTS (Doc. No. 458)** |
| **FILED:** | **October 7, 2008** |

**I.    BACKGROUND OF THE PRIOR LITIGATION.**

Plaintiff Cox Enterprises, Inc. ("Cox"), the minority shareholder of Defendant News-Journal Corporation ("NJC"), originally filed a shareholder derivative complaint pursuant to section 607.07401, Fla. Stat., seeking relief for the alleged misuse of corporate funds and waste of corporate assets by NJC and certain individual NJC directors. Doc. No. 1. NJC filed a notice of election to purchase Cox's shares in NJC pursuant to section 607.1436, Fla. Stat.[1] Doc. No. 51. After the parties were unable to agree on the fair value or the terms of purchase of Cox's shares, *see* § 607.1436(3)-(4), Fla. Stat., the Court held a trial to determine the fair value of Cox's shares. The Court entered orders determining the fair value to be $129.2 million, Doc. No. 251, and setting the terms of purchase, Doc. No. 262. On September 27, 2006, pursuant to section 607.1436(6), Fla. Stat., the Court dismissed the shareholder derivative action with prejudice. Doc. No. 262.

In light of the strained relationship between Cox and NJC and the conduct of the officers and directors of NJC that gave rise to the original lawsuit, the Court precluded NJC from disposing of corporate assets pending resolution of an anticipated appeal. *Id.* The United States Court of Appeals for the Eleventh Circuit affirmed the Court's valuation decision. *Cox Enters., Inc. v. News-Journal Corp.*, 510 F.3d 1350 (11th Cir. 2007).

On April 3, 2008, before the Eleventh Circuit issued its mandate on NJC's appeal, Cox filed an emergency motion in this Court seeking the appointment of a receiver and reinstatement of its shareholder derivative claims "[p]ursuant to the express authority of 607.1436(7), Florida Statutes . . . ." Doc. No. 315 at 1. This motion was denied without prejudice because the mandate had not yet

---

[1] This section provides in part: "In a proceeding under § 607.1430(2) or (3) to dissolve a corporation, the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares." § 607.1436(1), Fla. Stat.

issued. Doc. No. 318. Cox did not renew its motion to reinstate the shareholder derivative claims previously dismissed by the Court. Doc. No. 262.

## II. BACKGROUND OF THE INSTANT MOTIONS.

### A. *Cox's Motion to Set Aside Intervenors' Severance Agreements.*

On May 23, 2008, Cox filed a motion seeking "to set aside and declare invalid" severance agreements for NJC's executives and key managers, including the Key-Manager Severance Agreements entered into with Kathy Coughlin, Lori Kopp, Cory Lancaster, and Donald D. Lindley. Doc. No. 333 at 9. Counsel for Cox averred that Cox learned about these agreements only "as the result of a joint sale agreement between NJC and Cox to effect the sale of NJC to a third party." *Id.* at 4 n.3. Counsel further averred that NJC executed these agreements without Cox's knowledge after NJC's board made their irrevocable election to purchase Cox's shares. *Id.* ¶¶ 4, 8; *compare* Doc. No. 333-2 (Key-Manager Severance Agreements executed November 3, 2004) *with* Doc. No. 51 (Notice filed July 29, 2004, of election by NJC to purchase Cox's shares). Cox believed that the agreements would "depress the value of NJC to a third-party purchaser, thus preventing Cox from receiving the fair value of its shares upon a sale of the company." Doc. No. 333 ¶ 8.

Coughlin, Kopp, Lancaster, and Lindley (collectively the "Intervenors") moved to intervene in the case to be heard on Cox's motion. Doc. Nos. 339, 347, 348, 373. The Court granted their motions. Doc. Nos. 340, 364, 410. Thereafter, the Intervenors, through their respective attorneys, filed responses to Cox's motion to set aside their Key-Manager Severance Agreements. Doc. Nos. 378, 388, 394.

On September 5, 2008, Cox moved to amend its motion to set aside the Key-Manager Severance Agreements in order to withdraw the portion of the motion that asked the Court to

invalidate the agreements with the Intervenors. Doc. No. 412. Cox averred that "[d]uring the course of discovery on the motion, [it] has learned that the employees who were the beneficiaries of the 'Key-Manager' Agreements had no part in negotiating the terms of those Agreements." *Id.* at 13. Cox also learned that the attorneys who prepared the agreements, as well as Intervenors, interpreted the "change in control" provisions of the Key-Manager Agreements differently than Cox. *Id.* at 14. Their interpretation clarified an ambiguity Cox had addressed in its original motion, Doc. No. 333 at 4-5, and meant that the "change in control" provisions of the agreements included a second trigger that could "only be activated by the action of the employer" and not by the employee. Doc. No. 412 at 14. Under this clarified interpretation, along with other considerations, Cox concluded that it was unlikely that severance payments would ever be due to the Intervenors and other Key-Managers. *Id.* at 16, 19. The Court granted Cox's motion, thereby effectively dismissing the motion to set aside the Key-Manager Agreements NJC entered into with Coughlin, Kopp, Lancaster, and Lindley. Doc. No. 438.

        *B.*       *The Intervenors' Motions for Attorneys' Fees and Costs.*

Thereafter, Intervenors filed motions seeking reimbursement of attorneys' fees and costs they incurred in opposing Cox's motion to set aside the Key-Manager Severance Agreements. Doc. Nos. 456, 458. All Intervenors rely on section 607.07401(5), Fla. Stat., and section 10 of the Key-Manager Agreements as authorization for an award of attorneys' fees and costs. Doc. No. 456 at 9-10; Doc. No. 458 at 7-9.

Intervenor Coughlin also asserts entitlement to fees and costs against Cox and its counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent powers, asserting that Cox's motion was frivolous and brought in bad faith. Doc. No. 456 at 11-13.

Alternatively, Intervenors seek an order requiring NJC to indemnify them under the NJC by-laws, section 607.0850, Fla. Stat., and Florida common law. They also seek an award of attorneys' fees and costs from NJC and PMV, Inc. ("PMV"), the majority shareholder of NJC, under Florida's wrongful act doctrine.[2]

### III. ANALYSIS.

#### A. *Attorneys' Fees and Costs Under Florida's Shareholder Derivative Suit Statute.*

Florida's shareholder derivative suit statute provides for an award of reasonable expenses, including reasonable attorneys' fees, if a shareholder derivative proceeding was commenced without reasonable cause. § 607.07401(5), Fla. Stat. Intervenors argue that Cox's motion to set aside their Key-Manager Severance Agreements "was a form of derivative action/request for derivative relief." *E.g.*, Doc. No. 456 at 9. Specifically, they assert that "Cox attempted to stand in the shoes of News-Journal in a derivative capacity" in filing the motion. Doc. No. 458 at 8.

The Intervenors provide no legal support for this novel argument, and it appears that the Court has previously rejected it. *See* Doc. No. 414 at 4 (finding that the Court has jurisdiction to decide the motion to set aside the Key-Manager Severance Agreements under 28 U.S.C. § 1367 and the election statute, section 607.1436, Fla. Stat., but not the shareholder derivative suit statute). As noted above, the shareholder derivative action had been dismissed when Cox filed the motion to set aside the

---

[2] Intervenors Kopp, Lancaster, and Lindley also join in Cox's motion to require the individual defendants and PMV to pay the attorneys' fees and costs Cox incurred, Doc. No. 412. The Court did not grant the request for an award of attorneys' fees and costs pursuant to that motion. Instead it reserved jurisdiction to consider a separate motion for an award of attorneys' fees and costs. Doc. No. 474 at 26. Cox subsequently filed a motion to require Intervenors Kendall and Kaney to pay its attorneys' fees and costs, Doc. No. 478, but it did not file a motion to require the individual defendants and PMV to pay its attorneys' fees and costs. Therefore, the Intervenors' request to join in a motion that Cox did not file is moot.

agreements, Doc. No. 262, and Cox no longer had any rights or status as an NJC shareholder, "except the right to receive the amounts awarded by the order of the court." § 607.1436(6), Fla. Stat. Cox's motion was an attempt to enforce its right to receive the amounts awarded by the order of the Court. *See* Doc. No. 333 ¶ 8 (alleging the agreements would prevent Cox from receiving the fair value awarded by the Court's earlier order); Doc. No. 414 at 6. Accordingly, the prevailing party provisions of section 607.07401(5), Fla. Stat., are inapplicable and cannot serve as a basis for Intervenors' recovery of attorneys' fees and costs.

        B.        *Attorney's Fees and Costs Under Section 10 of the Key-Manager Severance Agreements.*

Section 10 of Intervenors' Key-Manager Severance Agreements provides as follows: "If either party hereto institutes any action or proceeding to enforce this Agreement, then the prevailing party shall be entitled to collect reasonable attorney's fees and the costs and expenses of such action whether at settlement, trial or on appeal." Doc. No. 333-2 at 3. The Key-Manager Severance Agreements were entered into by NJC and the individual intervenors; Cox was not a party to any of the agreements. Intervenors, nevertheless, assert that Cox was attempting "to stand in the shoes of NJC in a derivative capacity" and is thus subject to the fee provision and estopped from denying it is bound by the agreements. Doc. No. 456 at 10; *see also* Doc. No. 458 at 8-9. Intervenors rely upon *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993), to support their arguments.[3]

---

[3] Intervenors also cite *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004). In *Bailey*, the issue was whether individuals who entered into a loan agreement and other contracts with a corporation that contained an arbitration clause could be relieved of the obligation to arbitrate because the individuals were illiterate. This case is inapposite because Cox did not enter into the Key-Manager Severance Agreements or even have knowledge of the agreements

In *Sunkist Soft Drinks, Inc.*, Sunkist Growers, Inc., entered into a licensing agreement with General Cinema Corporation ("GCC") to permit GCC to produce and market a soft drink using the "Sunkist" brand name. GCC formed a wholly owned subsidiary known as Sunkist Soft Drinks ("SSD") to market and sell the product. The licensing agreement contained an arbitration clause. Later, Del Monte Corporation ("Del Monte") purchased the stock of SSD from GCC. Del Monte later sued Sunkist Growers, Inc., seeking a declaratory judgment related to a controversy regarding SSD's performance under the licensing agreement, and it moved to arbitrate the dispute under the arbitration provision of the license agreement. Sunkist Growers, Inc., objected to arbitration because it had not entered into the license agreement with Del Monte. The Court rejected Sunkist Growers, Inc.'s argument, concluding that both Sunkist Growers, Inc. and Del Monte "must rely on the terms of the written agreement in asserting their claims." *Id.* at 757.

In contrast, in the present case, Cox was never a party to the Key-Manager Severance Agreements. As a minority shareholder in NJC, the law does not impute NJC's agreements to Cox. *See, e.g., Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d Dist. Ct. App. 2008) (a corporation is a separate legal entity, distinct from its shareholders). Furthermore, Cox did not seek relief under the Key-Manager Severance Agreements, but sought to set them aside. As such, unlike *Sunkist Soft Drinks, Inc.*, Cox is not trying to enforce or obtain a declaration of the requirements of the Key-Manager Severance Agreements. Therefore, *Sunkist Soft Drinks, Inc.*, does not support Intervenors' argument that they are entitled to attorneys' fees and costs under section 10 of the Key-Manager Severance Agreements.

---

when they were formed.

*C. Attorneys' Fees and Costs as Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Powers.*

Section 1927 provides that litigants and their counsel who multiply "the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002). Because § 1927 is penal, courts must strictly construe its provisions. *Id.* The statute outlines three requirements necessary to justify the imposition of sanctions: 1) unreasonable and vexatious conduct; 2) that "multiplies the proceedings;" and 3) sanctions that do not exceed the costs incurred due to the objectionable conduct. *Id.* at 1312 (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001)). In *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007), the Eleventh Circuit held that "sanctions under § 1927 are measured against objective standards of conduct." To prevail, the movant must show that the offending party or counsel's actions were tantamount to bad faith. *Id.* at 1239.

Courts also have the inherent power to sanction parties, lawyers, or both for engaging in conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). The court may tax attorneys' fees and costs "when [the client, attorney, or both] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (internal quotation omitted), or otherwise failed to comply with court orders or the Federal Rules of Civil Procedure, *Zocaras v. Castro*, 465 F.3d 479, 490 (11th Cir. 2006).

Intervenor Coughlin contends she is entitled to fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent powers because Cox and its counsel unreasonably failed to investigate their

claims against her and others subject to the Key-Manager Severance Agreements prior to filing its motion to set aside the agreements. Doc. No. 456 at 11-12. She further contends that Cox engaged in vexatious litigation, pursued a frivolous claim, and acted in bad faith by continuing to litigate the motion. *Id.*

Cox contends that its action to set aside the Key-Manager Severance Agreements was warranted because NJC's Board of Directors neither considered nor authorized the agreements. Thus, Cox was well within its rights to seek to set aside those Key-Manager Severance Agreements, which it reasonably believed had "no discernable benefit to NJC, and which could result in a . . . liability to a purchaser of the company." Doc. No. 469 at 19 (quoting Doc. No. 333 at 23-24). That Cox ultimately agreed to withdraw the motion to set aside Intervenors' Key-Manager Severance Agreements does not establish that, at the time the motion to set aside the agreements was filed, Cox acted in bad faith. Therefore, an award of attorneys' fees and costs to Intervenor Coughlin is not warranted under § 1927 or the Court's inherent power.

   *D. Attorneys' Fees and Costs from NJC, PMV, and/or the Individual Defendants Under Indemnification Theories.*

Intervenors Kopp, Lancaster, and Lindley seek an order requiring NJC, PMV and/or the individual defendants to indemnify them for the attorneys' fees and costs they incurred under three theories:

  1. The language of NJC's by-laws. Doc No. 456 at 13-14; Doc. No. 458 at 9-10.

  2. The prevailing party provisions of section 607.0850, Fla. Stat. Doc. No. 456 at 14-15; Doc. No. 458 at 10.

  3. Florida common law indemnification. Doc. No. 456 at 15-16; Doc. No. 458 at 10-11.

-9-

I will address these arguments in turn.

### 1. NJC's By-Laws.

NJC's by-laws provide that NJC "shall indemnify any person who was or is a party . . . to any threatened, pending, or completed claim . . . by reason of the fact that he is or was a director, officer, employee, or agent of the corporation, or is or was serving at the request of the corporation . . . if he acted in good faith and in a manner he reasonably believed to be in or not-opposed to the best interest of the corporation . . . ." Doc. No. 458-2 at 7-8.

First, Cox filed the motion to set aside the Key-Manager Severance Agreements against NJC, not against the Intervenors. While the Court invited any NJC employee who entered into a Key-Manager Severance Agreement to be heard on Cox's motion, Doc. No. 360 at 2, intervention was not required; any employee who did not intervene would not be bound by the Court's decision on the motion, Doc. No. 414 at 4. Therefore, to the extent that the Intervenors entered this case, they did so of their own volition.

Second, none of the Intervenors have established or even addressed the requirement that they reasonably believed their opposition to the motion to set aside the Key-Manager Severance Agreements was in (or not opposed to) the best interest of NJC. Rather, the reason for the intervention was so that the Intervenors could protect their rights under the Key-Manager Severance Agreements, irrespective of whether their position was in (or not opposed to) the best interest of NJC at the time they intervened in the case.

Intervenors also have not shown that NJC could not have protected their interests without the need for them to intervene in the case. As NJC argues, by joining the case, Intervenors complicated the case to the detriment of NJC because Intervenors' "contractual rights under the Key Manager

-10-

Agreements could not have been impacted in any way by this lawsuit" had Intervenors not voluntarily inserted themselves into the litigation. Doc. No. 464 at 11.

Finally, the by-laws further provide that NJC "shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed claim, action, or suit by or in the right of the corporation . . . ." Doc. No. 458-2 at 8. NJC did not file the motion to set aside the Key-Manager Severance Agreements, and Cox did not bring its motion under the shareholder derivative action statute. As such, Article VIII, Section 2 of the by-laws is inapplicable under the circumstances presented here.

Therefore, Intervenors are not entitled to indemnification under the NJC by-laws.

### 2. Indemnification Under Section 607.0850, Fla. Stat.

Section 607.0850, Fla. Stat., contains essentially the same indemnification language as in NJC's by-laws. It provides that a director, officer, employee, or agent of a corporation shall be indemnified by the corporation to the extent they are a prevailing party, including in an action brought by or in the right of the corporation, when the person acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the corporation. Intervenors are not entitled to indemnification under section 607.0850 for the same reasons discussed with respect to the request for indemnification under NJC's by-laws.

### 3. Florida Common Law Indemnification.

Intervenors seek indemnification from NJC, PMV, or the individual defendants under the Florida common law right of indemnification. "In order to prevail on a common law indemnity claim, the following two-pronged test must be satisfied: (1) the party seeking indemnity (the indemnitee) must be without fault and its liability must be solely vicarious for the wrongdoing of another, and (2) the party against whom indemnity is sought (the indemnitor) must be wholly at fault." *Heapy Eng'g, LLP v. Pure Lodging, Ltd.*, 849 So. 2d 424, 425 (Fla. 1st Dist. Ct. App. 2003). "It has been established in Florida that generally an indemnitee is entitled to recover, as part of his damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, which he is compelled to pay as the result of suits by or against him in reference to the matter against which he is indemnified." *Ins. Co. of No. Am. v. King*, 340 So. 2d 1175, 1176 (Fla. 4th Dist. Ct. App. 1976).

Intervenors argue that the original shareholder derivative suit filed by Cox resulted from the alleged misconduct by NJC, PMV, and the individual defendants and, but for this alleged misconduct, the election to dissolve NJC would not have occurred and Intervenors' Key-Manager Severance Agreements would not have been challenged. Intervenors overlook their own admissions that the Key-Manager Severance Agreements were only necessary to persuade them to stay with NJC in light of their concerns about corporate instability as a result of the shareholder derivative action. *See* Doc. No. 456 at 3; Doc. No. 458 at 4; *accord* Doc. No. 464 at 15 n.11. Thus, there is no reason to believe that the Key-Manager Severance Agreements would have been entered into if the shareholders derivative suit had not been filed.

Furthermore, as NJC argues, Cox did not allege that Intervenors were liable directly or vicariously for any wrongdoing. They were, therefore, not "compelled" to intervene in this case or to pay their counsel any attorneys' fees or costs. *Accord* Doc. No. 414 at 4 (finding that intervention was at Intervenors' option, and parties that did not intervene would not be bound by the Court's decision).

Therefore, Intervenors are not entitled to common law indemnification by NJC, PMV, or the individual defendants.

> *E.   Attorneys' Fees and Costs Against NJC, PMV, and/or the Individual Defendants Under Florida's Wrongful Act Doctrine.*

In *Glace & Radcliffe, Inc. v. City of Live Oak*, 471 So. 2d 144 (Fla. 1st Dist. Ct. App. 1985), a surety originally sued the City of Live Oak and Glace & Radcliffe, Inc. ("Glace") under a performance bond. The trial court determined that Glace, the consulting and supervising engineer, was at fault for the failure to complete the project, and that the City of Live Oak was not at fault. *Id.* at 145. The City of Live Oak then sued Glace to recover the attorneys' fees it incurred in defending the suit, which were awarded by the trial court. On appeal, the First District Court of Appeal affirmed the award, stating that "an innocent party drawn into litigation with a third party by the wrong of another party may be entitled to recover expenses, including attorney's fees in defending that litigation . . . ." *Id.* at 145. To invoke the wrongful act doctrine, however, there must first be an adjudication that a party is at fault. *See Associated Elec. & Gas Ins. Servs., Ltd. v. Ranger Ins. Co.*, 560 So. 2d 242, 243 (Fla. 3d Dist. Ct. App. 1990).

As repeatedly addressed herein, Intervenors were not sued in this case; they intervened voluntarily. Because of the procedural posture of the case, the Court has not made a finding that NJC,

PMV, or any individual defendant was at fault. Without a finding of liability against NJC, PMV, or any individual defendant, even if Intervenors were "drawn into the litigation," they cannot establish that NJC, PMV, or any individual defendant has been found to have committed a wrongful act.

As such, Intervenors are not entitled to an award of attorneys' fees and costs under Florida's wrongful act doctrine.

## IV. RECOMMENDATION.

For the foregoing reasons, I respectfully recommend that the Court **DENY** Intervenor Kathy Coughlin's Motion for an Order Providing Entitlement to an Award of Attorneys' Fees and Costs, Doc. No. 456, and Intervenors Lori Kopp, Cory Lancaster and Donald D. Lindley's Motion for an Order Granting Entitlement to Attorneys' Fees and Costs, Doc. No. 458.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 11, 2009.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE