IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| COX ENTERPRISES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NEWS-JOURNAL CORPORATION, a Florida corporation, HERBERT M. DAVIDSON, JR., MARC L. DAVIDSON, JULIA DAVIDSON TRUILO, JONATHAN KANEY, JR., DAVID KENDALL, ROBERT TRUILO, GEORGIA KANEY, and PMV, INC., a Florida corporation,<br><br>Defendants. | CIVIL ACTION FILE NO.<br>6:04-CV-698-JA-DAB |

**JOINT MOTION OF RECEIVER AND COX ENTERPRISES, INC. FOR HEARING AND APPROVAL OF AND DIRECTION TO COMPLETE SALE OF PUBLISHING OPERATIONS TO HALIFAX MEDIA ACQUISITION LLC, AN AFFILIATE OF STEPHENS CAPITAL PARTNERS LLC AND STEPHENS INVESTMENTS HOLDINGS LLC**

Pursuant to this Court's April 17, 2009 Order (Doc. No. 507), James Hopson, Receiver for News-Journal Corporation ("NJC"), and Plaintiff and now judgment creditor Cox Enterprises, Inc. ("Cox") hereby jointly request that the Court afford the Receiver approval and direction to complete a sale of NJC's publishing operations to Halifax Media Acquisition LLC, an affiliate of Stephens Capital Partners LLC and of Stephens Investments Holdings LLC ("Stephens"), pursuant to the Asset Purchase Agreement

("APA"), a copy of which is attached hereto as Exhibit A. As the APA indicates, financing for the sale is to be provided by PNC Bank (see APA, Schedule 6.1.8).

The Receiver and Cox hereby jointly request that the Court schedule a hearing to allow the Court to consider and evaluate this Motion and a proposed Order, a copy of which is attached hereto as Exhibit B.

The Receiver and Cox agree that the Stephens offer, as set forth in the APA, provides the highest and best available value for NJC's publishing operations and that the transaction contemplated by the APA should therefore be completed. In support, they state as follows:

1. On April 18, 2008, judgment creditor Cox, NJC and NJC's sole shareholder PMV, Inc. entered into a Joint Sale Agreement ("JSA") in an attempt to effectuate a sale of NJC. Pursuant to the JSA, NJC hired Mr. Hopson as Chief Executive Manager to assist with the sale and, pending its completion, operate the company.

2. On April 17, 2009, at Cox's request, the Court terminated the JSA and appointed Mr. Hopson Receiver. (Doc. No. 507 at ¶ 1).

3. In the 20 months since his appointment first as Chief Executive Manager and then as Receiver, Mr. Hopson has worked diligently to both operate and attempt to sell NJC's publishing operations. He has been assisted in the sale process by the leading

merger-and-acquisition firm in the U.S. newspaper industry, Dirks, Van Essen & Murray (DV&M). (Owen D. Van Essen Decl. at ¶ 1). The sale process has involved:

>   a. Preparing in the spring and summer of 2008 and updating in July of 2009 an offering memorandum providing extensive information about NJC's finances and operations and the Daytona market.
>
>   b. Contacting over 60 individuals and companies believed to have a serious interest in purchasing the operations.
>
>   c. Negotiating nondisclosure agreements with over 25 of these prospective buyers.
>
>   d. Reviewing and analyzing expressions of interest by at least 10 prospective buyers and preparing for and conducting their tours of NJC and the market and visits with the Receiver and others in NJC management
>
>   e. Assisting certain of these prospective buyers with extensive due diligence requests and conducting exclusive negotiations as to a potential asset purchase agreement.

(Van Essen Decl. at ¶ 5).

4. Stephens has distinguished itself in this process by offering, as set forth in the APA, the highest and best available value for NJC's publishing operations, considering price, terms and certainty of closing. (Van Essen Decl. at ¶ 6). The consideration provided by Stephens for the operations is fair and reasonable and will provide a greater recovery than would be provided by any other practical available alternative. (Id. at ¶ 11).

5. Beginning in late 2008, following months of intensive efforts to identify the highest and best available purchaser, NJC engaged in pointed and, for a considerable period, exclusive negotiations with one potential buyer. However, despite approximately seven months of discussion, these negotiations never resulted in any meaningful consensus on the parameters of an agreement. Frustration with that process led NJC to reach out broadly once again to other potential buyers this past July. (Van Essen Decl. at ¶ 7).

6. In August, Stephens expressed interest in a possible purchase and its subsequent evaluation of NJC's finances and operations and negotiation of an agreement have proceeded apace ever since. NJC and Stephens have now agreed on all material terms and, as evidenced by the APA, are anxious to close. As the APA indicates, if and when the Court affords the Receiver the requested authority and direction to proceed, the closing will occur within 5 business days thereafter. (Van Essen Decl. at ¶ 8).

7. Neither Stephens nor any of its affiliates is related to or affiliated with DV&M, the Receiver, Cox or any of the parties to this action, including NJC's sole shareholder, PMV Inc. (Van Essen Decl. at ¶ 9).

8. It is in the best interests of all concerned to close the Stephens transaction pursuant to the APA at the earliest opportunity. As Mr. Van Essen described in his April 13, 2009 declaration (Doc. No. 506), the newspaper industry is struggling. The uncertainty of the industry's revenue performance coupled with a severe restriction of credit has made it difficult to complete newspaper transactions. The ownership of NJC's publishing operations has been unclear for much more than a year, and Stephens, which has a proposed publisher standing by, is ready and eager to consummate the sale. (Van Essen Decl. at ¶ 10).

9. In the last two years DV&M has been actively involved in the prospective sale, successful or not, of over 65 daily and weekly newspapers and believes, in light of this active experience in the market, that all reasonable steps have been taken to sell NJC's publishing operations and that consummation of the Stephens transaction, as set forth in the APA, would obtain for those operations their best and highest value. (Van Essen Decl. at ¶ 11).

10. All of the real estate included in the sale of NJC's publishing operations contemplated by the APA is real estate devoted to those operations. Procuring separate appraisals of the standalone value of this real estate would not assist the Court in its

review of the proposed sale of the publishing operations to Stephens. This is because it would not be practical to sell this real estate separately from the publishing operations nor would such a sale, even if practical, result in greater value to NJC than the sale contemplated by the APA. (Van Essen Decl. at ¶ 12).

11. Given the foregoing, the Receiver and Cox request that this Court authorize and direct the Receiver to close the transaction contemplated by the APA.

12. Contemporaneously with the filing of this Motion, the Receiver has published notification of the Motion with an explanation that any person who wishes to file an objection with the Court must do so within 11 days as specified in the Court's April 17, 2009 Order. (Doc. No. 507 at ¶ 2 ("When the Receiver has negotiated the terms of a sale of some or all of the assets of NJC, which he recommends be approved by the Court, he shall file a report notifying the Court and within eleven (11) days of the filing of the report, any party may file a response or objection to the proposed sale."). A copy of the notice, attached hereto as Exhibit C, has been published in *The Wall Street Journal*, *The Daytona Beach News-Journal*, and *The Orlando Sentinel*. In addition to service on all parties to this action, this notice is being separately provided via U.S. Mail to: (i) all entities identified on the accounts payable lists of NJC; (ii) counsel for Stephens; (iii) all entities known to have expressed a bona fide interest in acquiring NJC's publishing operations; (iv) all entities known to have filed a UCC-1 financing statement or recorded any lien in the public records in or upon NJC's publishing operations; (v) the Pension

Benefit Guaranty Corporation; (vi) the Internal Revenue Service and all state and local taxing authorities which have a reasonably known interest in the relief requested by the Motion; (vii) the United States Attorney's Office; and (viii) the Environmental Protection Agency and all state and local environmental or regulatory agencies in any jurisdiction where NJC owns or, within the last 5 years, has owned or used real property.

13. The Receiver and Cox request that once objections, if any, have been filed, the Court schedule a hearing to allow it to consider and evaluate the Motion as well as the proposed Order attached hereto as Exhibit B.

14. Once this Court considers the objections, if any, to the sale, the Receiver and Cox ask the Court to enter the proposed Order authorizing and directing the Receiver to proceed with the transaction set forth in the APA.

15. Should the Court authorize and direct the Receiver to proceed with the transaction, the Receiver shall, within five business days of its closing, issue notice that any person or entity who wishes to file a claim against the proceeds or other assets of NJC must notify the Receiver within 14 days. Once those claims have been received, the Receiver will submit a proposed distribution to the Court. The Receiver will not distribute any of the proceeds of the sale without this Court's approval. The proceeds will be maintained in an interest-bearing account until distribution.[1]

---

[1] To facilitate the sale, Cox has entered into an agreement with Stephens, a copy of which is attached hereto as Exhibit D, providing assurance that Cox shall not take or

Benefit Guaranty Corporation; (vi) the Internal Revenue Service and all state and local taxing authorities which have a reasonably known interest in the relief requested by the Motion; (vii) the United States Attorney's Office; and (viii) the Environmental Protection Agency and all state and local environmental or regulatory agencies in any jurisdiction where NJC owns or, within the last 5 years, has owned or used real property.

13. The Receiver and Cox request that once objections, if any, have been filed, the Court schedule a hearing to allow it to consider and evaluate the Motion as well as the proposed Order attached hereto as Exhibit B.

14. Once this Court considers the objections, if any, to the sale, the Receiver and Cox ask the Court to enter the proposed Order authorizing and directing the Receiver to proceed with the transaction set forth in the APA.

15. Should the Court authorize and direct the Receiver to proceed with the transaction, the Receiver shall, within five business days of its closing, issue notice that any person or entity who wishes to file a claim against the proceeds or other assets of NJC must notify the Receiver within 14 days. Once those claims have been received, the Receiver will submit a proposed distribution to the Court. The Receiver will not distribute any of the proceeds of the sale without this Court's approval. The proceeds will be maintained in an interest-bearing account until distribution.[1]

---

[1] To facilitate the sale, Cox has entered into an agreement with Stephens, a copy of which is attached hereto as Exhibit D, providing assurance that Cox shall not take or

## RULE 3.01(g) CERTIFICATION

Contemporaneously with the filing of this Motion, the Receiver will publish notification of the motion with an explanation that any person who wishes to file an objection with the Court must do so within 11 days as specified in the Court's April 17, 2009 Order.

## MEMORANDUM IN SUPPORT

Pursuant to this Court's April 17, 2009 Order, Mr. Hopson has been appointed Receiver of NJC, charged with the "exclusive power and authority to administer, manage and oversee all aspects of the business, affairs and operations of NJC (real, personal or mixed, tangible, or intangible) pending the consummation of a sale of NJC." (Doc. No. 507 at ¶ 1).

With this authority, the Receiver has duly marketed NJC's publishing operations for sale and conducted a thorough sales process with the help of DV&M. (Van Essen Decl. at ¶¶ 5-8). The sales process afforded all interested parties a full opportunity to make an offer of purchase, and, in the opinion of Mr. Van Essen and the Receiver, the Stephens offer, as set forth in the APA, provides the highest and best available value for

---

accept from NJC any proceeds from the sale except and to the extent that the distribution of such proceeds is authorized by order of the Court and then only in accordance with certain time restrictions stated in the agreement. For the same purpose and also included in Exhibit D are copies of letters that Cox and Mr. Van Essen have each provided to Stephens confirming that each believes that the proposed sale to Stephens will provide the highest and best available value for NJC's publishing operations.

the publishing operations of NJC. See, e.g., Securities & Exchange Comm. v. Mutual Benefits Corp., 2008 WL 906764 (S.D. Fla. April 3, 2008) (approving sale of company assets where sales process was "fair, reasonable, and appropriate, and gave each interested party an opportunity to submit its highest and best bid").

Cox, which has also been involved in the sale process from the outset and which is a judgment creditor of NJC with a perfected claim in excess of $150 million, including interest, agrees with the Receiver and Mr. Van Essen that the Stephens offer, as set forth in the APA, provides the highest and best available value for the publishing operations of NJC.

The sale of NJC's publishing operations set forth in the APA will include certain real estate devoted to those operations. When real property is the subject of a private judicial sale in federal court, multiple appraisals generally are required to support the proposed purchase price. 28 U.S.C. § 2001(b). In this case, however, the Receiver, in consultation with the broker (see Van Essen Decl. at ¶ 12), has determined that the sale of the ongoing publishing operations of NJC will result in a greater recovery than a liquidation of those operations' individual assets. The Receiver's determination is based on his experience and his broker's experience, including their mutual experience actively marketing the business for the last 20 months. Thus, appraisals of the real property included within the APA as a stand alone asset would be (a) meaningless in evaluating the going concern value of the publishing operations to be sold pursuant to the APA; (b)

misleading because a liquidation sale is not proposed; and (c) a waste of the Receiver's limited resources. Because the sale of such real property is merely incidental to the sale of NJC's publishing operations, the Receiver and Cox respectfully request that the Court exercise its discretion to approve the sale without such appraisals. See, e.g., Tanzer v. Huffines, 412 F.2d 221, 222 (3d Cir. 1969); Securities & Exchange Comm. v. Kirkland, 2009 WL 1439087 (M.D. Fla. May 22, 2009).

The Receiver, Mr. Van Essen, Cox and Stephens all agree that it is in the best interest of all concerned to consummate the transaction set forth in the APA at the earliest opportunity.

As this Court has instructed, the Receiver hereby submits the APA to the Court for consideration. (Doc. 507 at ¶ 2) ("When the Receiver has negotiated the terms of a sale of some or all of the assets of NJC, which he recommends be approved by the Court, he shall file a report notifying the Court."). The Receiver and Cox request that this Court, upon holding a hearing and considering any objections to the sale, enter the proposed Order attached as Exhibit B and authorize and direct the Receiver to close the sale.

Should the Court authorize and direct the Receiver to proceed with the transaction, the Receiver shall, within five business days of its closing, issue notice that any person or entity who wishes to file a claim against the proceeds or other assets of NJC must notify the Receiver within 14 days. Once those claims have been received, the Receiver will submit a proposed distribution to the Court. The Receiver will not

distribute any of the proceeds of the sale without this Court's approval. The proceeds will be maintained in an interest-bearing account until distribution.

Respectfully submitted,

BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.

By    <u>s/ John A. DeVault, III</u>
      John A. DeVault, III
      Florida Bar No. 103979
      Courtney K. Grimm
      Florida Bar No. 953740
      The Bedell Building
      101 E. Adams Street
      Jacksonville, FL 32202
      Telephone: 904-353-0211
      Facsimile: 904-353-9307

-and-

DOW LOHNES PPLC
Peter C. Canfield
6 Concourse Parkway
Suite 1800
Atlanta, Georgia 30328-6117
Telephone: 770-901-8800
Facsimile: 770-901-8874

Counsel for Plaintiff

LILES, GAVIN, COSTANTINO
& GEORGE

By    <u>s/Rutledge R. Liles</u>
      Rutledge R. Liles
      Florida Bar No. 102805
      Katie L. Dearing
      Florida Bar No. 184632
      225 Water Street
      Suite 1500
      Jacksonville, FL 32202
      Telephone: 904-634-1100
      Facsimile: 904-634-1234

Counsel for Receiver
James W. Hopson and the
News-Journal Corporation

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of January, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants and further notify anyone else who is, or has ever been, on the Court's service list for this matter.

Leonard A. Marsh
33 Winding Creek Way
Ormond Beach, Florida 32174

Dennis F. Kozak
27 Spinnaker Circle
South Daytona, Florida 32119

Stephen Blais
4168 Grand Avenue
DeLand, Florida 32720

Lori Gamboa
5862 Cypress Estates Drive
Elkton, Florida 32033

Rex D. Smith
2240 Brian Avenue
South Daytona, Florida 32119

Ellen Andrews
80 Big Buck Trail
Ormond Beach, Florida 32174

Gerald Laurelli
2061 Taylor Road
Port Orange, Florida 32128

Laurence S. Saffer
3333 South Atlantic Avenue, # 1804
Daytona Beach Shores, Florida 32118

Thomas M. Lindley
789 Falcon Drive
Port Orange, Florida 32127

Gary E. Flatt, Sr.
833 Narcissus Street
Holly Hill, Florida 32117

Thomas S. Brown
824 Black Duck Drive
Port Orange, Florida 32127

Kenneth R. Hornack
213 Lynnhurst Drive
Ormond Beach, Florida 32176

Emery M. Jefferys
528 Sherwood Oaks Road
Orange City, Florida 32763-6359

Suzanne D. Kridner
343 Aleatha Drive
Daytona Beach, Florida 32114

Bruce J. Kuehn
2460 Jerry Circle
Port Orange, Florida 32128

Andrew E. Mikula
329 Grove Street
Ormond Beach, Florida 32174

Laura Stewart
810 W. Howry Avenue
DeLand, Florida 32720

Susan Wright
824 E. River Oak Drive
Ormond Beach, Florida 32174

        s/Courtney K. Grimm
        Courtney K. Grimm
        Bedell, Dittmar, DeVault, Pillans & Coxe
        Professional Association
        The Bedell Building
        101 East Adams Street
        Jacksonville, FL 32202