# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**COX ENTERPRISES, INC.,**

**Plaintiff,**

**-vs-**                                          **Case No. 6:04-cv-698-Orl-28DAB**

**NEWS-JOURNAL CORPORATION, HERBERT M. DAVIDSON, JR., MARC L. DAVIDSON, JULIA DAVIDSON TRUILO, JONATHAN KANEY, JR., DAVID KENDALL, ROBERT TRUILO, GEORGIA KANEY, and PMV, INC.,**

**Defendants.**
_____

# ORDER

This cause is before the Court on the "Report and Recommendation for the Disposition of All Remaining NJC Assets and the Wind-Up and Discharge of His Receivership" (Doc. 652) filed by James Hopson, the receiver for Defendant News-Journal Corporation ("NJC"). Objections to the Receiver's Report and Recommendation have been filed by the following: PMV, Inc. (Doc. 659); Pension Benefit Guaranty Corporation ("the PBGC") (Doc. 660); Marc L. Davidson, Julia Davidson Truilo, and Robert Truilo (Doc. 661); and Thomas S. Brown, Kenneth R. Hornack, Emery M. Jefferys, Suzanne D. Kridner, Bruce J. Kuehn, Andrew E. Mikula, and Laura Stewart (collectively, "the Intervenors") (Doc. 662). Cox Enterprises, Inc. ("Cox") has filed a Response (Doc. 665) to these Objections, as has the Receiver (Doc. 669). After consideration of the parties' papers and the arguments presented at an August 9, 2010 hearing, the following ruling thereon issues.

The Receiver recommends that because NJC's publishing operations have been sold and because NJC no longer has any significant ongoing business operations, the remaining assets of NJC should be dispersed and the receivership discharged.  In sum, the Receiver recommends that all of the remaining assets of NJC—with the exception of $347,639.70—be distributed to Cox to satisfy the September 28, 2006 judgment (Doc. 263) entitling Cox to $129.2 million plus interest.[1]  (Doc. 652 at 29-30).  NJC's assets to be distributed include the proceeds from the sale of NJC's publishing operations less certain closing payments, cash on hand, real property,[2] an art poster collection, anticipated tax returns, and any and all pending or potential claims for relief that NJC has or may have against its co-defendants in this action, their counsel, and others.  (Id. at 30-34).  PMV objects to the Receiver's recommendations, arguing that NJC possesses no claims for relief against PMV or, alternatively, that these claims are not assignable.  The PBGC objects to the disbursement of all the assets to Cox, claiming that Cox "cannot receive payment if such payment would

_____

[1]As to the $347,639.70, it has been represented to the Court that Cox has agreed to relinquish its claim to this amount to be distributed as follows: (1) $49,544.05 to Jerry Laurelli in settlement of his claims to the assets contained in a "rabbi trust"; (2) $221,111.00 in aggregate to Joe Brooks, Donald Dresser, and Richard Kearly for lump-sum settlements of their "Top Hat Plan" claims; (3) $65,788.00 in aggregate to Cora Russo and Katherine Pappas for lump-sum settlements of their Retiree Medical claims; and (4) $11,196.65 to PMV in payment for moneys expended in obtaining the Carpenter appraisal.  (Doc. 652 at 30).  The Court interprets Cox's agreement to relinquish its claims to this amount as Cox's intent to distribute these amounts from its own recovery from NJC's assets.

[2]The receiver recommends—with Cox's approval—that the Court value this real property at 125% of its mean appraised value when determining the equivalent value for reducing the outstanding amount owed to Cox as a creditor.  The Court finds this fair and reasonable and attaches a value of $8.29 million to the real property identified by the Receiver.

render the company insolvent" under the tests set forth in section 607.06401, Florida

Statutes, and that Cox's claims should not be granted priority over those of the PBGC.  Marc

Davidson and the Truilos object to the Receiver's recommendation that their claims filed with

the Receiver on April 19, 2010 be denied.  These claims involve a request for indemnification

and a request for disbursement of funds held in a rabbi trust for Robert Truilo.  Finally, the

Intervenors object to the failure of the Receiver "to provide for the payment of the group life

insurance plan" for NJC retirees and the Receiver's treatment of Cox as a preferred creditor.

> As previously summarized by this Court:
>
> This case began when Cox, the NJC minority shareholder, sued NJC and its officers, directors, and majority shareholder, PMV, Inc.  In its Complaint, Cox alleged that the Defendants had misused corporate funds and wasted the assets of NJC to the detriment of Cox.  Cox sought relief in the form of money damages or, in the alternative, dissolution of NJC.  Defendant NJC ultimately responded by filing an irrevocable notice of election to purchase Cox's shares, as was its prerogative pursuant to section 607.1436, Florida Statutes.

(Doc. 303 at 2 (internal citations and footnotes omitted)).  In accordance with subsection (5)

of section 607.1436, Florida Statutes, when the parties could not agree on the fair value of

Cox's minority interest, the Court determined that value to be $129.2 million on June 30,

2006 after conducting a bench trial.  (Doc. 251 at 33).  The Court then set forth, in a series

of positive and negative covenants, the terms and conditions of NJC's purchase of Cox's

shares.  (Doc. 262).  Upon entry of that Order, Cox's petition for dissolution was dismissed

and Cox was stripped of its rights and status as a shareholder of NJC.  § 607.1436(6), Fla.

Stat. ("Upon entry of an order under . . . subsection (5), the court shall dismiss the petition

to dissolve the corporation under s. 607.1430 and the petitioning shareholder shall no longer

have any rights or status as a shareholder of the corporation, except the right to receive the

amounts awarded by the order of the court, which shall be enforceable in the same manner as any other judgment.").

Section 607.1436(7) states that "[t]he purchase ordered pursuant to subsection (5) shall be made within 10 days after the date the order becomes final unless, before that time, the corporation files with the court a notice of its intention to adopt articles of dissolution." § 607.1436(7), Fla. Stat.  In an attempt to facilitate a joint sale of NJC and in accordance with the parties' wishes, the start of this ten-day period was delayed until April 17, 2009. (See Docs. 321, 323, 461, 489, 507).  This ten-day period, however, ran without NJC either filing notice of its intent to adopt articles of dissolution or making payment under the Court's Order.

Section 607.1436(8) provides that "[a]ny payment by the corporation pursuant to an order under subsection (3) or subsection (5), other than an award of fees and expenses pursuant to subsection (5), is subject to the provisions of [section] 607.06401." § 607.1436(8), Fla. Stat.  Section 607.06401, Florida's statute covering distributions to shareholders, prohibits a distribution if after the distribution the "corporation would not be able to pay its debts as they become due in the usual course of business" or if the "corporation's total assets would be less than the sum of its total liabilities plus . . . the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution."  § 607.06401, Fla. Stat.

The PBGC, Davidson, and the Truilos argue that the Receiver is prohibited by section

607.1436(8) from making any payment pursuant to the Court's Order and that the assets of NJC are to be distributed to the unsecured creditors on a pro rata basis.  In response, Cox argues that due to NJC's failure to elect dissolution or to make payment pursuant to the Court's Order, it has been removed from the statute's purview and section 607.1436(8) does not apply to distributing the assets to Cox because by operation of 607.1436(6), Cox has been stripped of its status as a shareholder.

"[I]t is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 456 (Fla. 1992).  "It is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." Id. at 455.  "Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." Id.

Under a literal interpretation of the statute—where no payment would be allowed because NJC would be insolvent—Cox would be left in a legal netherworld by the Board of Directors' inaction, able to receive neither payment under the Court's Order nor a distribution of assets from a dissolution because the deadline in which to elect such a procedure has passed.  This interpretation is rejected because its implementation would frustrate the otherwise orderly statutory scheme created by the legislature.  To effectuate the legislature's intent in drafting subsection (8), that subsection must be read in conjunction with subsection (7) as establishing a directive to the board of directors of a corporation proceeding under this statute that when making payment in accordance with a court's subsection (5) order would leave the corporation insolvent as defined by section 607.06401, dissolution is the only

option.  Subsection (8) cannot be read as an absolute prohibition of a payment that would leave a corporation insolvent.  Rather, such a payment can be made, much the same way a distribution in violation of section 607.06401 may be made.  Because subsection (8) states that "[a]ny payment by the corporation pursuant to an order under . . . subsection (5) . . . is subject to the provisions of [section] 607.06401," the board of directors simply bears the risk of being subjected to personal liability under section 607.0834(1), Florida Statutes, just as does a director who authorizes a distribution in violation of section 607.06401.[3]

Here, the NJC Board of Directors no doubt faced a difficult decision.  On one hand, had NJC elected to adopt articles of dissolution in a timely fashion, Cox's original claims for corporate waste and misuse or corporate funds against the individual directors would have been revived, subjecting the directors to potential personal liability and a resumption of the previously dismiss claims.  On the other hand, had NJC made payment under the Court's September 27, 2006 Order, it would have run afoul of subsection (8) and section 607.06401(3).  Facing this dilemma, the Board took no action.  Such inaction cannot be used as a shield by directors to avoid their responsibilities as stewards of a corporation. Subsection (7) directed that payment was to be made within ten days of the Order becoming

---

[3]Section 607.0834(1) states:
A director who votes for or assents to a distribution made in violation of [section] 607.06401 or the articles of incorporation is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating [section] 607.06401 or the articles of incorporation if it is established that the director did not perform his or her duties in compliance with [section] 607.0830.
§ 607.8034(1), Fla. Stat.

final—here, on April 27, 2009 due to the series of extensions granted by the Court—unless before that time NJC filed its articles of dissolution.  By failing to timely file articles of dissolution, the Board made the implicit decision to make the payment directed by the Court under subsection (5) and must bear the consequences—if any—for this action.  Accordingly, the Court finds that the distribution recommended in the Receiver's Report is a payment pursuant to the Court's September 27, 2006 Order.

Additionally, Cox has an equitable first priority claim to all of the assets to be distributed up to the extent of its judgment.  Though not expressly stated in the September 27, 2006 Order, the Court's intent in entering the positive and negative covenants was to provide security for Cox's award, an objective specifically authorized by statute.  See § 607.1436(5), Fla. Stat.("[T]he court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate, which may include payment of the purchase price in installments, when necessary in the interests of equity, provision for security to assure payment of the purchase price and any additional costs, fees, and expenses as may have been awarded, and, if the shares are to be purchased by shareholders, the allocation of shares among such shareholders.").  To the extent that Cox would be considered a general unsecured creditor with regard to the assets of NJC which have not been levied upon, including the cash on hand and any expected tax returns of NJC, the Court hereby clarifies that Cox has continued to hold an equitable right to receive the assets of NJC otherwise not encumbered as of the September 27, 2006 Order.

Further, Robert Truilo's objection to the Receiver's recommendation that he take nothing from the rabbi trust is specifically overruled.  "A rabbi trust, 'an irrevocable trust for

deferred compensation,' is one mechanism commonly used to set aside deferred compensation amounts without jeopardizing the 'unfunded status' of a top hat plan." In re Bill Heard Enters., Inc., 419 B.R. 858, 864-65 (Bankr. N.D. Ala. 2009). "Funds held in a rabbi trust 'are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency.'" Id. (quoting In re IT Group, Inc., 448 F.3d 661, 664 (3d Cir. 2006)).  Because the funds held in the rabbi trust were subject to the claims of NJC's creditors, these funds are to be distributed to Cox in accordance with this Court's ruling that the assets of NJC were being maintained to ensure payment of Cox's judgment.  Also, the Intervenors' objection to the Receiver's cessation of payments on the group life insurance policy is rejecting, the Court determining that no vested right existed.

Objections to the Receiver's proposal to assign existing and future claims of NJC to Cox are overruled.  However, in the unlikely event that Cox were to recover in excess of the judgment, this excess is to be distributed pro rata amongst the remaining general unsecured creditors.

The Court adopts the Receiver's Report and Recommendation subject to the prior discussion.  The Receiver is directed to distribute all of NJC's assets to Cox in partial satisfaction of Cox's judgment, and upon completion of this distribution, the Receiver is discharged from his duties.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 13th day of August, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party