# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

COX ENTERPRISES, INC.,

                    **Plaintiff,**

-vs-                                               **Case No.  6:04-cv-698-Orl-28DAB**

NEWS-JOURNAL CORPORATION,
HERBERT M. DAVIDSON, JR., MARC L.
DAVIDSON, JULIA DAVIDSON TRUILO,
JONATHAN KANEY, JR., DAVID
KENDALL, ROBERT TRUILO, GEORGIA
KANEY, and PMV, INC.,

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **COX'S MOTION AS TO FEES AND EXPENSES INCURRED IN CONNECTION WITH SETTING ASIDE EXECUTIVE SEVERANCE AGREEMENTS (Doc. No. 719)** |
| **FILED:** | **July 27, 2012** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part, and that a sanction in the amount of $320,963.60 be imposed on Georgia Kaney and David Kendall, jointly and severally and that the Clerk be directed to enter judgment accordingly.

       This case presents with a long and complex history.  For present purposes, the following

matters are pertinent.  As set forth in the docket and the papers, on May 23, 2008, Plaintiff (herein

"Cox") filed a Motion to Set Aside Certain Severance Agreements, alleging that "within the past

month" Cox had "just become aware" that Defendant News-Journal Corporation ("NJC") had entered into golden parachute agreements with many of its employees, including two of its officer/directors - Georgia Kaney and David Kendall (Doc. 333). Cox sought to set aside the agreements. NJC opposed the Motion (Doc. 352), and Kendall and Kaney ("K&K") sought to intervene and oppose the Motion (Doc. 395). Discovery followed. K&K moved to dismiss the Motion to Set Aside (Doc. 396), as did others. Cox filed a response (Doc. 406), and the Court held a hearing on the motions to dismiss (Doc. 410).

While the matter was under advisement, Cox moved to amend the Motion to Set Aside, based on matters established during discovery (Doc. 412). Kendall and Kaney opposed the motion (Doc. 423). On September 5, 2008, the Court denied the motions to dismiss (Doc. 414). On September 24 and 25, 2008, the District Judge held a two day evidentiary hearing on the merits of the Motion to Set Aside (Docs. 444, 447). On December 5, 2008, the Court entered an Order holding Kendall's and Kaney's golden parachute agreements to be void, and reserved jurisdiction to award costs and fees, upon motion (Doc. 474). Cox timely filed such a motion, seeking fees and expenses, including expert witness fees, totaling $372,320.53 (Doc. 478). The motion was granted in part and denied in part, without prejudice, as Magistrate Judge Spaulding directed the disclosure of "the total amount of attorney's fees . . . NJC paid in connection with Kendall and Kaney's defense of Cox's motion to set aside [their] Executive Severance Agreements," and ordered the parties to then confer in a good faith effort to resolve the matter (Doc. 535). Judge Spaulding ruled: "If they are unable to reach an agreement, then Cox may file a renewed motion to order Kendall and Kaney to pay Cox's attorneys' fees and expenses, under § 1927 or otherwise . . ." *Id.*

The parties were unsuccessful in resolving the matter, and Cox again moved for reimbursement of its attorneys fees and expenses incurred in setting aside the golden parachute agreements (Doc. 552). Upon magistrate judge reassignment of the case, the undersigned issued a

Report and Recommendation that the motion for attorney's fees be denied (Doc. 614).  Cox objected (Doc. 623), and the District Court held a hearing on same (Doc. 683).  On July 16, 2012, the District Court granted Cox's motion for fees and expenses, in part, holding that "Kendall and Kaney will be required to reimburse Cox for its attorneys' fees involved in litigating the motion to set aside" as a sanction, but will not be required to reimburse Cox for expert witness fees (Doc. 716 at 10-11).   The Court directed Cox to file a motion detailing the amount of fees to which it is entitled to recoup, and the instant motion, requesting reimbursement of approximately $437,500.00, followed.

Cox has filed supporting papers (Doc. 718) and Kendall and Kaney have filed a response (Doc. 725).  The Court has also considered the additional papers filed at Docs. 727 and 728.  At long last, the matter is exhaustively briefed and ripe for review.

### *The claim*

As the District Court has already determined that Cox is due to be reimbursed for its attorneys' fees relating to litigating the motion to set aside, no issues of entitlement are presented.  Rather, the parties dispute the proper scope of the reimbursement.

Cox seeks a total attorneys' fee and expenses award of **$437,502.80,** calculated as follows:

Fees/Expenses incurred in having Kendall and Kaney's agreements set aside:

| | |
|---|---|
| Bedell Firm - attorneys' fees | $185,537.50 |
| Dow Lohnes - attorneys' fees | 137,232.00 |
| Expenses (not including expert witness fees) | 15,917.39 |
| **Subtotal** | **$338,686.80** |

**PLUS**

Fees/Expenses incurred in litigating its entitlement to fees/expenses**:**

| | |
|---|---|
| Bedell Firm - attorneys' fees | $68,931.50 |
| Dow Lohnes - attorneys' fees | 28,253.50 |
| Expenses | 1,630.91 |
| **Subtotal** | **$98,815.91** |

**TOTAL FEES**                      $419,954.50

**TOTAL EXPENSES**                  $17,548.30

**TOTAL FEES AND EXPENSES**         $437,502.80

As set forth in the supporting papers, Cox was represented in this matter by its established counsel, the firm of Dow Lohnes PLLC, and also by the Jacksonville firm of Bedell, Dittmar, DeVault, Pillans & Coxe, P.A.[1]  The supporting Declarations and Time Sheets are voluminous, and the papers reflect the work of at least a dozen timekeepers.  *See* Docs. 478, 478-2, 478-3, 718, 718-1, 718-2.  By way of summary, Cox claims the following:

For the Bedell Firm (Docs. 478-2, 718-1):

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| *John A. DeVault, III* | 100.50 | $350/hr | $35,175.00 |
| | 161.50 | $375 | $60,562.50 |
| (litigating fees) | 102.40 | $375 | $38,400.00 |
| *Courtney K. Grimm* | 70.00 | $240 | $16,800.00 |
| | 175.40 | $265 | $46,481. 00 |
| (litigating fees) | 85.30 | $265 | $22,604.50 |
| *Law Clerks* | 72.90 | $110 | $8,019.00 |
| (litigating fees) | 9.70 | $110 | $1,067.00 |
| *Paralegal* | 185.00 | $100 | $18,500.00 |
| (litigating fees) | 68.60 | $100 | $ 6,860.00 |

For the Dow, Lohnes Firm (Docs. 478-3, 718-2):

---

[1]In prior declaration, Attorney Peter Canfield averred that Dow Lohnes has "regularly represented Cox and its properties for many decades." (Doc. 269).  Mr. Canfield, who practices out of the firm's Atlanta office, declared that, in April 2004, on behalf of Cox, he contacted and retained attorney John DeVault and the Bedell firm to assist with respect to this action. *Id.*

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| *Patrick D. Barry* | 29.40 | $125 | $ 3,675.00 |
| *Peter C. Canfield* | 244.30 | $395 | $96,498.50 |
| (litigating fees) | 40.90 | $395 | $16,155.50 |
| *Whitney S. Dawkins* | 7.30 | $110 | $    803.00 |
| *Lesli N. Gaither* | 117.90 | $230 | $27,117.00 |
| (litigating fees) | 52.60 | $230 | $12,098.00 |
| *Paul R. Lang* | 15.80 | $385 | $ 6,083.00 |
| *Jared C. Miller* | 14.6 | $175 | $ 2,555.00 |
| *Edward J. O'Connell* | 1.30 | $385 | $    500.50 |

In all, Cox seeks reimbursement of over 1,614 hours at hourly rates ranging from $100 (paralegal) to $395 (partner), as well as expenses.  In its opposition paper (Doc. 725), Kendall and Kaney object to this amount, contending that the claim includes: "(1) fees that are duplicative and should not be awarded, (2) fees for work for [the] corporate waste issue that should not be awarded; (3) expenses, none of which have been awarded; (4) fees for preparing the amount of fees; [and] (5) fees for travel time."   Kendall and Kaney submit that the appropriate award is $18,137.25, awarded severally (Doc. 725).

## Issues and Analysis

The Court looks to the familiar lodestar approach in calculating the appropriate reimbursement here. The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)

(*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)).  Additional factors to be considered in

determining a reasonable fee include:

> (1) the time and labor required; (2) the novelty and difficulty of the issues;
> (3) the skill required to perform the legal services properly; (4) preclusion
> of other employment; (5) the customary fee; (6) whether the fee is fixed or
> contingent; (7) time limitations imposed by the client or circumstances; (8)
> the amount involved and the results obtained; (9) the experience, reputation
> and ability of the attorneys; (10) the undesirability of the case; (11) the
> nature and length of the professional relationship with the client; and (12)
> awards in similar cases.

*Norman*, 836 F.2d at 1292 (*citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th

Cir. 1974)).

"The fee applicant bears the burden of establishing entitlement and documenting the

appropriate hours and hourly rate." *Id.* at 1303.  An applicant may meet his or her burden by

producing either direct evidence of rates charged under similar circumstances, or opinion evidence

of reasonable rates. *Norman*, 836 F.2d at 1299.  In addition, the court may use its own expertise and

judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.*

at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may

reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "Counsel for the

prevailing party should make a good faith effort to exclude from a fee request hours that are excessive,

redundant, or otherwise unnecessary." *Id.* at 434.

*Reasonable Rate*

As indicated in the charts above, Cox's counsel seeks reimbursement at rates ranging from

$100 to $395, depending upon the timekeeper.   Although the Dow lawyers hail from Atlanta, the

going rate in the community is the most critical factor in setting the fee rate. *See Martin v. University

of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).  According to the papers, counsel recognizes

this and represents that the hourly rates sought here are, in fact, discounted from the usual rates

charged, and are appropriate for this market.  Upon review, the Court agrees that the claimed rates are within the range of reasonable rates for like work in this Court.  Indeed, Kendall and Kaney expressly acknowledge the reasonableness of the claimed rates charged by the Bedell firm, and do not challenge the rates charged by the Dow firm (Doc. 725-1).  Absent objection, the Court accepts the proffered range of rates.

*Reasonable Hours*

Cox claims over 1,614 hours were necessarily expended in litigating the Motion to Set Aside and the issue of related attorney's fees.  As noted, Kendall and Kaney object to the scope of the claim, and contend that the appropriate scope of the award should be further reduced to exclude excessive time, duplicative time, travel time, fees for litigating the issue of fees, and expenses.  The Court treats each, in turn.

*Scope of Entitlement*

K&K argue that the Motion to Set Aside did not focus on the assertion that the NJC Board approved the severance agreements, which the District Court found to be a vexatious position, but "centered on [the issue of] corporate waste."  As such, they argue, reimbursement of fees incurred in litigating the corporate waste issue would not be appropriate here as "the sanction may not exceed the costs, expenses and attorneys' fees reasonably incurred because of such conduct." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  Kendall and Kaney further contend that "the business judgment rule does apply to officers" and "it was not vexatious litigation for K&K to present that . . . in court, even if its applicability to this issue was rejected."  They argue that Cox's efforts with respect to this issue is not reimbursable.  Finally, K&K contest the period of time claimed to be applicable by Cox (Doc. 725).

Objections as to the scope of the sanctionable conduct go to a matter that has already been decided by the District Judge in the sanctions Order, which provided: "Kendall and Kaney will be required to reimburse Cox for its attorneys' fees involved *in litigating the motion to set aside*" (Doc. 716 at 10-11-emphasis added). To the extent that motion includes time spent on litigation of matters that K&K feel were not vexatious, that is a matter for another motion, another court or another day. For present purposes, the District Judge has determined that reasonable fees relating to prosecuting "the motion" – not just parts of the motion – are to be awarded. The task of this Court is to determine that amount, not revisit whether the District Judge's ruling was appropriate in the first instance.

As for the time period at issue, Cox seeks fees for "the period from May 2008 (when the existence of the golden parachute agreements became known) through October 2008 (which included the two day evidentiary hearing before the Court in September 2008 on the motion to set aside)," and for the time period of November 2008 through August 2010 (relating to litigating the fee issue) (Doc. 718-1). K&K contest the breadth of this request, contending that the "window of vexatious activity" runs only from the date they intervened in the case (August 4, 2008) until the date K&K's "mistake" regarding the assertion of board approval of the severance agreements was "corrected" on August 15, 2008 (Doc. 725, citing Doc. 407). They further dispute entitlement to fees for litigating the issue of fees.

Kendall and Kaney's interpretation as to the applicable time period is contrary to the findings of the District Court. A review of the sanctions Order shows that the District Court explicitly found that K&K's bad faith *preceded* their direct intervention in this case and lasted throughout the prosecution of the motion to set aside. *See* Doc. 716 at p. 7-8, n.5 ("Although this [opposition to the motion to set aside] was filed by NJC–not by Kendall or Kaney individually because they had not been allowed to intervene at the time–Kendall and Kaney were both intimately involved in the

-8-

litigation and were represented by and directing the actions of Cobb Cole.  In addition, Kendall provided an affidavit to support NJC's [response] (Doc. 352-2)").  The District Court noted that "[t]hroughout this litigation, Kendall and Kaney have shown a disregard for the procedures of this Court by directing NJC to willfully defy Court Orders" (Doc. 716 at p. 10).  The District Court made a specific finding that "Kendall and Kaney acted in bad faith during the period of litigation opposing Cox's motion to set aside" and held that they would be required to reimburse Cox "for its attorneys' fees involved in litigating the motion to set aside." *Id.* at pp. 10-11.  As such, the Court sees the applicable time period for the prosecution of the motion on the merits as beginning May 2, 2008 (the date of the first time entry regarding the severance agreements) through October 2, 2008, the date of the filing of post-hearing case authorities (Doc. 453).

The Court also finds it appropriate to include the fees incurred in securing the instant award of fees.[2] *See generally, Johnson v. Mississippi,* 606 F.2d 635, 638 (5th Cir. 1979) ("We conclude that attorney's fees may be awarded for time spent litigating the [42 U.S.C.§ 1988] fee claim."); *Thompson v. Pharmacy Corp. of America, Inc.,* 334 F.3d 1242, 1245 (11th Cir. 2003) (accord); *Smith v. Grand Bank & Trust of Fla.,* No. 04-80343-CIV,  2005 WL 6106148, *16 (S.D. Fla. April 28, 2005) (defendants entitled to recover attorney's fees for the time spent in litigating motion for sanctions under 28 U.S.C. § 1927); *Dictiomatic, Inc. v. United States Fid. & Guar. Co.*, No. 93-2123-Civ-Paine, 94-1692-Civ-Paine; 2000 WL 33115333, *11, n. 14 (S.D. Fla. May 2, 2000) ("federal courts ... allow recovery of fees for litigating fees as a matter of course.").   Thus, the fees for the time period of November 2008 to August 2010 relating to litigating the entitlement to fees are also properly within the scope of the sanction.

---

[2]Cox's citation to *McMahan v. Toto,* 311 F. 3d 1077, 1085 (11th Cir. 2002) as authority for this contention is curious (Doc. 719 at p. 5). *McMahan* construed Florida law to hold that "[t]he district court should have decreased Toto's attorney's fee award by the amount spent litigating the amount of attorney's fees to which he was entitled." 311 F.3d at 1086. The applicability of this holding here is not apparent.

*Excessive, Duplicative or Unnecessary Time*

Having defined the scope of the entitlement, the Court turns to the other objections raised by K&K.  In their papers, K&K contend that a fee of almost half a million dollars to prosecute a motion to set aside is excessive on its face and includes unnecessary and duplicative time spent by too many lawyers.

"Redundant hours generally occur where more than one attorney represents a client." *Norman, supra,* 836 F.2d at 1302. Here, Cox used the services of two law firms and a dozen lawyers and professionals to successfully set aside the severance agreements and obtain a fee award.  This was without a doubt a significant call to arms.  Nonetheless, "[t]here is noting inherently unreasonable about a client having multiple attorneys." *Id.*  A reduction for redundant hours "is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) (emphasis original).

In order to evaluate the "distinct contribution" of each lawyer here, the Court would have to wade through reams of time entries reflecting over a thousand billed hours. Such an expenditure of judicial time is impractical.  *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (where the fee motion and supporting papers are voluminous, the court need not engage in an hour by hour analysis);  *see also Hensley,* 461 U.S. at 437 ( "A request for attorney's fees should not result in a second major litigation").  Rather, bearing in mind the *Johnson* factors and its own experience, the Court looks to the task at hand and the amount of hours charged and concludes that the total amount billed here cannot be taxed as "reasonable" fees.  This is so even though the papers indicate that NJC

paid its own counsel $258,541.50 to defend the set aside motion (Doc. 719).  The Court finds the expenditure by Cox of almost half a million dollars to litigate this discrete motion and the fee issue to be excessive by any reasonable standard.

To be clear, the Court is not finding that Cox did not have the right to utilize this many lawyers for this many hours to obtain the result it obtained.  It is not for the Court to dictate how Cox should run its business or handle its litigation choices.  However, "[w]hile [a party] is certainly free to choose whatever staffing arrangements it desires in litigating a case, when it seeks to visit the cost of that choice on its adversary, it is only entitled to reimbursement of reasonable costs." *Chemische Fabrik Budenheim K G v. Bavaria Corp. Int'l*, No. 6:08-cv-1182-ORL22DAB, 2010 WL 98991, at *5  (M.D. Fla. Jan. 6, 2010). Indeed, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423 (11th Cir.1999).

Review of the timesheets reveals overlap and redundancies that are not fairly shifted to K&K. For example, as noted in the papers (Doc. 725), it appears that the Dow lawyers billed over a hundred hours to prepare for and attend hearings and depositions handled by Mr. DeVault.  Moreover, dozens of hours were spent by both firms to research the same matters.  Conferences with each other abound. While some overlap and conferencing are to be expected in a litigation of this magnitude, there is no showing that all of this additional time was necessary or advanced the case.  While "second chair" time may be reasonable and compensable, that is rarely the case for the fourth, fifth, and sixth chair in a fee-shifting context.[3]

---

[3]Although K&K contend that the entire billing of Dow Lohnes is duplicative, the Court disagrees.  One of the *Johnson* factors includes the length of the relationship with the client.  There is nothing inherently unreasonable or inappropriate in Cox's decision to hire additional (not substitute) counsel to assist its long-standing counsel in this representation.  While this can result (as here) in a certain amount of duplication of effort, the Court assumes that Dow Lohnes' in- depth knowledge of the client and its business was valuable to the successful prosecution of the motion to set aside the severance agreements.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce hours with an across-the-board cut." *Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The Court finds a 20% reduction of the fee claim as a whole for duplication/excessive/non-compensable charges to be warranted here. The reduction of 20% adequately accounts for the redundancies noted, as well as the non-compensable "oversight" time reflected in the billing. A reduction of 20% results in a lodestar fee of $335,963.60 [$419,954.50 total fee minus 20% ($83,990.90) =$335,963.60].

The Court also agrees with K&K that the decision to retain out of town counsel resulted in fees for time spent in travel that are not subject to cost shifting. As travel time is included in several "block billing" entries, the Court makes an estimation that further excludes approximately $15,000 in travel time. Thus, applying the *Johnson* factors and considering the matters set forth by the parties as well as its own expertise, the Court finds a reasonable lodestar fee to be $320,963.60.

*Adjusting the Lodestar*

In fashioning an appropriate amount for a sanction, a court must take into consideration the financial circumstances of the person being sanctioned. *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002). As sanctions are personal to the wrongdoer, the Court must consider whether joint liability is appropriate. *Id.* at 1338 ("We therefore vacate the district court's order imposing more than one and a half million dollars in sanctions jointly and severally against Appellants, and we remand for the district court to assess the amount of sanctions against each Appellant as appropriate in the light of his individual resources.").

Toward that end, David Kendall offers a financial declaration (Doc. 725-2) to support his assertion that "I am unable to pay an award of attorney's fees to Cox in any significant amount greater than a few thousand dollars without causing my wife and me severe financial hardship in the short

term and the long term." *Id.*[4]  While the declaration reveals credit card debt and a few relatively modest hard assets (a personal residence with a mortgage, two 2007 vehicles, bank accounts totaling a few thousand dollars), Kendall also has an IRA portfolio with a balance of $410,615.45 and a *monthly* salary of $8,299.00 *after* taxes.  While Mr. Kendall may not have readily available liquid assets sufficient to pay a sizeable sanction immediately, there is no showing that any award cannot be paid over time from a garnishment of this generous wage.

Absent any indication that one of the wrongdoers here was more responsible than the other, the sanction should be joint and several. The Court concludes that Mr. Kendall's financial circumstances do not preclude the suggested sanction.

*Expenses*

As for expenses, the Court agrees with K&K that these items (deposition expenses, court reporter fees, travel costs) are costs, not attorney's fees.  While they may be taxable under a different theory, they were not included in the District Court's sanction ruling, which speaks solely to attorney's fees. *See* Doc. 716 :"The Motion for Fees and Expenses in Connection with the Order Setting Aside Executive Severance Agreements (Doc. 552) is GRANTED in part and DENIED in part; it is GRANTED insofar as Cox and the Receiver seek to recoup attorneys fees related to litigating the motion to set aside, it is DENIED in all other aspects.").  As such, they are not within the scope of the sanction, and the Court recommends no award of same here.

## Conclusion

For the foregoing reasons, the Court **respectfully recommends** that the motion be **granted, in part** and that a sanction in the amount of $320,963.60 be imposed on Georgia Kaney and David Kendall, jointly and severally and that the Clerk be directed to enter judgment accordingly.

---

[4]Georgia Kaney offers no financial information for the Court to consider.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 13, 2012.

*David A. Baker*
                                                               DAVID A. BAKER
                                                   UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy